ARTHUR KUNZE and Others, Respondents, *v.* JOSEPH N. WEBER and Others, Appellants.

First Department, May 27, 1921.

Corporations — membership corporations — Musical Mutual Protective Union, incorporated as membership corporation, affiliated with American Federation of Musicians, an unincorporated association, is subject to laws of this State — internal management of corporation not subject to control of unincorporated association — action of board of directors of corporation in suspending president not subject to review by president of unincorporated association — action of president of unincorporated association in suspending members of board of directors of corporation unjustified — said members had right to resort to courts — injunction order contained sufficient recital of grounds on which granted.

The plaintiffs are a majority of the board of directors of the Musical Mutual Protective Union, a membership corporation organized under the laws of this State, which is affiliated with the American Federation of Musicians, an unincorporated association having members in different States. In the by-laws of the Protective Union appeal from any decision of the board of directors to the executive board and the convention of the federation is provided for.

*Held,* that while the primary purpose of the federation is the formation of unions not incorporated under the laws of any State, this does not prevent a local union becoming incorporated and thereafter affiliating with the federation, but if such corporation is accepted by the federation the acceptance is subject to the laws of the State under which the local union is incorporated.

The directors of the union having suspended its president under the power conferred on them by the by-laws of the union and having given notice

to him of the charges and a time and place for hearing, they were justified in disregarding an order issued by the president of the federation, called an emergency order, staying all proceedings for the presentation and hearing of charges against the president of the union, enjoining them from acting as directors of the union, and generally from taking any action against its president.

The power to regulate the internal affairs of the union is given under the laws of this State and is not subject to interference by the federation, and the fact that the union was affiliated with the federation did not give the latter, nor its president, any jurisdiction or power to interfere with the internal management of the union.

The right to suspend the president of the union, given to the majority of the board of directors thereof under the by-laws which were passed in pursuance of the laws of this State, is not subject to review by the president of the federation, and the president of the union having been suspended neither the federation nor its president had the right to reinstate him and enjoin the members from interfering with his acting as president nor the right to enjoin the trial of the charges.

The remedy of the suspended president, was through the union and its by-laws and not by appeal to the federation, except so far as the right to appeal was given by the by-laws.

The president of the federation exceeded his powers in expelling the plaintiffs therefrom and notifying employers of musicians of the expulsion, since that power lies with the executive board of the federation, and the injunction restraining the officers of the federation and of the union from preventing the plaintiffs from exercising their rights as members of the union and restraining the president of the union from acting as such was properly granted. Said order of expulsion cannot be justified under the emergency clause of the constitution and by-laws of the federation in which certain powers are given to the president in emergencies, for that clause will not be construed by the courts to give him any further powers than are necessary to preserve the *status quo*, or to protect the federation till action can be taken by the executive council or the federation in convention.

The plaintiffs had a right to resort to the courts since they were expelled without hearing and deprived of their means of livelihood, without any opportunity for an immediate and prompt review of the action of the president of the federation.

The order to show cause and the temporary injunction did not purport to suspend the president of the union but merely to give effect to the suspension legally made by the board of directors, and to restrain the president from acting in contravention thereof.

The said orders sufficiently state the grounds on which they were granted as required by section 610 of the Code of Civil Procedure.

APPEAL by the defendants, Joseph N. Weber and others, from an order of the Supreme Court, made at the New York

Special Term and entered in the office of the clerk of the county of New York on the 26th day of February, 1921, granting plaintiffs' motion for a temporary injunction restraining the officers of the American Federation of Musicians and the officers of the Musical Mutual Protective Union from interfering with or preventing the plaintiffs from exercising their rights and privileges as members of the Musical Mutual Protective Union, from giving notice that the plaintiffs had been expelled from the union and from issuing notices calling for the election of directors of the union or proceeding to elect directors, and restraining the president of the union from exercising any of the powers of the president.

*William P. Maloney*, for the appellants.

*George Edwin Joseph* of counsel [*Jacob J. Schwebel*, attorney], for the respondents.

SMITH, J.:

The plaintiffs are eight directors of the Musical Mutual Protective Union and constitute a majority of the board. This Protective Union is a membership corporation organized under the laws of the State of New York. The American Federation of Musicians is an unincorporated association containing members in different States. It is provided in the articles of association of the federation that any musical union may be affiliated with them. The Protective Union has been affiliated with the American Federation and in the by-laws of the Protective Union appeal from any decisions of the board of directors of the Protective Union to the *executive board* and the *convention* of the federation is provided by article 1, section 6, of the by-laws of the Protective Union. It is also provided that the Protective Union shall send the president and two delegates to the convention of the American Federation.

The plan of the American Federation seems to be primarily for the formation of local unions not incorporated under the laws of any State. This does not prevent, however, a local

union becoming incorporated and thereafter becoming affiliated with the American Federation. If such corporation, however, is accepted by the American Federation, it must be subject to the laws of the State under which the local union is incorporated. Of course the federation may refuse membership to members of the local union other than a local union independent of such a corporation. But this has not been done in the case at bar, and the Protective Union is still a membership corporation organized under the laws of this State, and is affiliated with the federation.

It is not quite clear as to just the nature of the membership in this American Federation. Sometimes the unions themselves are referred to as the members. Other times the members of the local unions are referred to as members of the federation. A fair interpretation, however, is that the members of these local unions become members of the federation *ipso facto* when the local union is organized under or affiliated with the federation and the existence of the local unions as members is simply an administrative factor to accomplish the purposes sought to be accomplished by the federation.

With this condition of the membership of the American Federation we may refer to the facts of the particular case, in order to ascertain just what questions arise for determination. One Finkelstein had been elected the president of this Protective Union. There arose a difference in the union over the acts of Finkelstein, and the eight members of the board of directors preferred charges against the president, suspended him as president and gave him notice of a hearing. Finkelstein, as president, had refused to put motions that were properly made in a meeting of the board of directors. He appointed a man as sergeant-at-arms, who was not confirmed by the board, as he was required to be and he, nevertheless, issued warrants for the payment of his salary on the ground that he was a holdover. Clearly he was not a holdover if his original employment was not confirmed. There are other charges against Finkelstein but it is probably immaterial here to consider whether they were sufficient to authorize his removal as the president of the Protective Union. Finkelstein went to the defendant Weber, who is the president of the American Federation, and Weber immediately issued an order

which he called an emergency order staying all proceedings for the presentation or consideration of charges against Finkelstein, and enjoining these directors from acting as directors of the Protective Union and generally prohibiting them from taking any action as against Finkelstein as president of the Protective Union. The directors disregarded this order of Weber on the ground that it was without jurisdiction. It seems clear to me that it was without jurisdiction. This corporation is a corporation with a statute regulating its affairs. It was authorized to make by-laws, and the by-laws adopted provided how the president could be removed. The directors took proceedings for the removal of the president by making charges and giving him notice of a hearing, and meantime they suspended him from acting as president. Then came the order from Weber. It seems clear that the mere fact that that this Protective Union was affiliated with the American Federation neither gives to the federation nor to the president thereof the power to interfere with the internal management of the corporation. If the union itself had committed any act which was repugnant to the purposes of the federation, the right of affiliation might have been withdrawn. The power, however, to regulate the internal affairs of this corporate union is given under the laws of the State and is not subject to interference from this unincorporated association. In this respect the rights of the members of this union materially differ from the rights of members of a union organized under the federation itself, wherein the federation might itself make laws which defined and designated those rights. The right to suspend an officer of the corporation given to the majority of the board of directors under the by-laws passed in pursuance of the laws of the State is not subject to review by this president of the federation. Under the orders which were disregarded by these directors and for which these directors have been expelled, the president of this federation assumed to take the power given by law to the directors of the Protective Union away from those directors. This was in excess of the president's authority. Having suspended this president of the Protective Union as might be lawfully done under their by-laws, neither the American Federation nor the president of the federation had the right

to reinstate him and enjoin the members from interfering with his acting as president while he was so suspended. Nor had the federation or its president the right to enjoin the trial of the charges made against the president of the Protective Union. The remedy of the president of the Protective Union was through the corporation and its own by-laws and not by appeal to the American Federation, except so far as the right of appeal was given by the by-laws of the Protective Union itself. When the eight directors disregarded this order of the president staying the action of the local union, the president made another order in which he first made all members of any affiliated union members of the federation, and by a later order expelled these eight members. Of course, if these men were not members of the federation he could not make them members of the federation merely for the purpose of expelling them. It was not necessary to make them members of the federation. They were already members. But even if this corporation had not been incorporated this president had no authority to expel these members thus summarily without giving them a hearing, even if he had the right to expel them at all. But he has expelled them and notified the employers of musicians that they were expelled as members, which has resulted in their being thrown out of employment. The emergency clause in the constitution and by-laws of the federation, in which powers are given the president in emergencies will not be construed by the courts to give him any further powers than are necessary to preserve the *status quo,* or to protect the federation until action can be taken by the executive council or the federation in convention. The power to expel is given to the executive board of the federation and not to the president. Otherwise, if the executive board were not in actual session, the president would have the power to expel any one and call it an emergency matter which would hold until the next meeting of the convention which might be a year off. This would be true even if the union were not a corporation. Such a power involving property rights is denied because inequitable. This order was clearly in excess of any powers, emergency or otherwise, and an injunction was properly granted to prevent this president exercising any such powers. That these by-laws

cannot authorize this president to deprive plaintiffs of their rights as members of the corporation by any emergency clause comes directly within the ruling of the Court of Appeals in *Matter of Brown* v. *Order of Foresters* (176 N. Y. 132).

It is claimed, however, that these respondents have no right to appeal to the courts until they have exhausted their remedies within the corporation. As a general proposition this is true. But here these men have been expelled and notice of their expulsion given and they have been deprived of their livelihood, without a hearing. There is no provision under the by-laws of the American Federation for any appeal from any emergency order of the president except to bring the matter up at the next convention. If there were any such provision for review, it must be prompt in its action, otherwise the power to expel a member as an emergency act would be unreasonable and invalid.

The point is made by the appellants that neither the judge granting the order to show cause, nor the Special Term which made the order appealed from had power to suspend or remove the president of the Protective Union. They cite as their authority sections 305 and 307 of the General Corporation Law. These sections provide how injunctions suspending trustees or officers may be granted by the courts but they contain no prohibition or regulation as to suspension by the directors. The by-laws of the Protective Union do provide for such action by its board of directors. They may prefer charges against any officer, and on notice he may be tried and removed. In the meantime he may be suspended from acting. The order to show cause and the order appealed from do not attempt to suspend or remove Finkelstein. They simply give effect to the suspension by the directors and restrain Finkelstein from acting in contravention of such suspension. Another point is made that the orders do not state the grounds on which they were granted as required by Code, section 610. There seems to be a sufficient recital of the grounds where in the first paragraph the order states in effect that defendants are molesting and preventing the plaintiffs from exercising their rights as members of the Protective Union, and that it satisfactorily appears from the complaint that the commission of the acts complained of will

produce injury to the plaintiffs. (*Richards* v. *Goldberg*, 7 Misc. Rep. 389, 390.)

The order should, therefore, be affirmed, with ten dollars costs and disbursements.

CLARKE, P. J., DOWLING, PAGE and GREENBAUM, JJ., concur.

Order affirmed, with ten dollars costs and disbursements.