OPINION OF THE COURT
Harold J. Hughes, J.
Plaintiffs move for a preliminary injunction and request partial summary judgment in this declaratory judgment action.
This case involves a power struggle for control of the State’s largest public employee union (CSEA), pitting the union president (McGowan) and delegates against the vice-president (McDermott) and the board of directors. At stake is command of a union that wields influence at the highest levels of State and local governments through political indorsement and contributions and the size and nature of its membership. The court enters the fray reluctantly, well aware that in the ordinary case the judiciary will not interfere with the internal affairs of a not-for-profit corporation, including a labor union absent a showing of fraud or substantial wrongdoing (Matter of Gilheany v Civil Serv. Employees Assn., 59 AD2d 834). However, this is not the ordinary case in that this controversy could paralyze the operation of a 200,000-member public employee union, to the detriment of the general public. Consequently, declaratory relief is appropriate.
CSEA is a 75-year-old labor union organized as a not-for-profit corporation. From its incorporation in 1941 until March of 1976, CSEA’s counsel was the DeGraff firm. The enactment of the Public Employees’ Fair Employment Act (L 1967, ch 392), commonly called the Taylor Law, greatly expanded the duties and powers of all public employee unions through the enactment of agency shops, exclusive representation, and the granting of the statutory right to public employees to collective bargaining over the terms and conditions of employment. CSEA grew in size and influence. During 1976 it broke its long relationship with the DeGraff firm and retained the Roemer *4 firm as its counsel.[1] In the present action each firm claims to be the attorneys of record for CSEA.
This controversy stems from resolutions adopted by the board of directors of CSEA on February 27, 1986 and May 6, 1986. CSEA’s board of directors consists of 115 members elected by the general membership. Section 2 of article IV of CSEA’s constitution provides that the "power and authority to transact all business of the Association shall, subject to the power and authority of the Delegates at meetings of the Association, be vested in a Board of Directors”. Section 1 of article I of the bylaws states that the "President shall be responsible for the organization and direction of the staff of the Association”.
Prior to the adoption of the February 27, 1986 resolution, the board of directors concluded that there existed many problems in the internal organization of CSEA’s staff, and through the implementation of the two resolutions, attempted to redress the perceived deficiencies. The board’s reorganization plan created 13 new positions and provided that the persons holding these positions report directly to Vice-President McDermott, rather than to President McGowan. The May 6, 1986 resolution further implemented the reorganization plan by directing all professional and management staff responsible for field operations to report in accordance with the new chain of command, and providing that all appointments and dismissals of management confidential staff above grade 14 not be effective without the prior approval of the personnel committee of the board of directors.
President McGowan was of the opinion that the board of directors was attempting to usurp his authority to organize and direct the staff, and commenced an action to set aside the board’s resolutions. Simultaneously, during August of 1986, a number of presidents of CSEA locals petitioned President McGowan to call a special meeting of the delegates with an agenda to review: (1) "the power and authority of the elected President of CSEA to carry out his constitutional duties including his responsibility to organize and direct the staff of the Association; and (2) the delivery of legal services to CSEA”.
Not-For-Profit Corporation Law § 603 (d) states that a corpo *5 ration may provide that its members elect representatives or delegates who when assembled exercise all of the powers, rights and privileges of members of the corporation. Since more than 200,000 people belong to CSEA, it would be impractical to have members meetings. Therefore, the union’s constitution provides that each local elect delegates. In effect, the delegates are the representatives of the union rank and file.
Three actions were taken at the September 9, 1986 special delegates meeting. The first action was the passage of a resolution reaffirming the bylaw directing the president to be responsible for the organization and direction of the staff and providing "the Board of Directors of the Association has no power to interfere with the chain of command between the President and the staff of the Association or to interfere with the directives of the President to the staff”. The resolution went on to rescind the February 27 and May 6 resolutions of the board. The second action was to pass a resolution directing President McGowan to appoint a committee of members to review the delivery of legal services to CSEA and to report its findings and recommendations to the delegate body at the annual meeting commencing October 25, 1986. Finally, the delegates, acting upon an item not listed on the agenda of the special meeting, adopted a resolution naming John Francisco as treasurer to replace the retiring treasurer.
President McGowan determined that the actions taken at the special meeting removed the basis for his lawsuit to undo the board’s resolutions and his motion to discontinue his action was granted. Vice-President McDermott then commenced an action against CSEA and Francisco challenging Francisco’s appointment upon the ground that it was not listed on the agenda to be discussed at the special meeting of delegates, and upon the further ground that the union’s bylaws provide that "Vacancies in the office of Secretary and Treasurer may be filled for the remainder of the term by the Board of Directors”. This court has granted a preliminary injunction in the McDermott action restraining Francisco from taking office upon the reasoning that McDermott will be likely to succeed on the merits due to the lack of notice to the delegates that filling the vacancy in the treasurer’s position would be addressed at the special meeting, and upon the ground that no emergency existed permitting the delegates present at the meeting to add the issue to the agenda. Thereafter, the plaintiffs in this action, presidents of four CSEA locals plus delegate Robert Simoni, commenced this action to *6 declare all resolutions passed at the September 9, 1986 special meeting void upon the grounds that: (1) delegates were not given proper notice of the meeting; (2) the credentials committee improperly determined voting strength based upon paid membership in the association as of June 1, 1985 rather than June 6, 1985, the date required by the union’s constitution; and (3) CSEA’s constitution and the Not-For-Profit Corporation Law direct that a not-for-profit corporation is to be managed by its board of directors and the resolutions adopted by the delegates improperly attempt to limit the authority of the CSEA board of directors to manage the union.
Plaintiffs in this action made the present motion for a preliminary injunction restraining CSEA from implementing the resolutions of the delegates adopted at the September 9, 1986 special meeting. President McGowan retained the De-Graff firm to represent CSEA in both the McDermott and the Simoni actions. The board of directors instructed the Roemer firm to appear for CSEA in both actions. Thus, before the merits can be reached, a determination must be made as to which law firm will represent CSEA in this lawsuit.[2]
The representation question is determined by the practical consideration that a declaratory judgment action can be maintained only when there is an actual controversy between the parties to the litigation (De Milia v State of New York, 72 AD2d 536, cert denied 447 US 922). This court is constitutionally prohibited from rendering an advisory opinion in a friendly lawsuit (New York Pub. Interest Research Group v Carey, 42 NY2d 527). Here, after being directed to appear by the board, the Roemer firm made a motion for summary judgment "declaring that, pursuant to the Not-For-Profit Corporation Law of New York, the Certificate of Incorporation of CSEA, Inc. and the constitution and by-laws of CSEA, Inc., the CSEA board of directors is vested with plenary authority to manage the affairs and organization of CSEA, Inc., and, accordingly, the action taken by CSEA delegates with respect to Resolution No. 1, at a Special Meeting on September 9, 1986 is *7 null and void”. In bringing the motion, Mr. Roemer candidly states that his law firm is "in the unusual position of substantially agreeing with the allegations and legal conclusions submitted by the plaintiffs herein”. Plaintiffs’ attorneys immediately rejected the answering papers that the DeGraff firm served on CSEA’s behalf and joined in the Roemer motion for summary judgment. As a result, if the Roemer firm is allowed to represent CSEA in this action, this court will have before it plaintiffs and a defendant joining in a request for a judgment declaring that plaintiffs’ position is correct, i.e., a friendly lawsuit requesting an advisory opinion. The court cannot render an advisory opinion and if the Roemer firm is allowed to represent CSEA here, this declaratory judgment action would have to be dismissed as not presenting a justiciable controversy. Therefore, the order to be entered hereon will direct the DeGraff firm to represent CSEA in this lawsuit.
Since plaintiffs joined in the Roemer motion for partial summary judgment, this court can search the record and grant summary judgment where appropriate, even if not requested (CPLR 3212 [b]; Fertico Belgium v Phosphate Chems. Export Assn., 100 AD2d 165, 171). Likewise, as this is a declaratory judgment action, the court is free to declare the rights and legal relationships of the parties as established by the record and is not bound by the relief requested by the parties (Cahill v Regan, 5 NY2d 292; see also, CPLR 3017 [a]; Crane v Axelrod, 86 AD2d 923).
The first issue is whether notice of the September 9, 1986 special meeting was given to all CSEA delegates. Subdivision (a) of section 7 of article II of the union’s bylaws provides that "Notice of all meetings of the Association * * * shall be given in the official publication or by mailing or by telegram to each delegate or committee member at least three days before the date of such meeting”. Not-For-Profit Corporation Law § 605 provides that notice to the members of a corporation (which the delegates are) of a special meeting "shall state the place, date and hour of the meeting”. A delegate or member who attends the meeting without notice, and without protesting that lack of notice, waives defective notice (Not-For-Profit Corporation Law § 606). "In the absence of waiver or estoppel, the failure to give the required notice of a * * * meeting is a substantial omission of an essential requirement which cannot be disregarded, but will be considered as rendering void the action taken at the meeting” (14 NY Jur 2d, Business Relationships, § 674, at 483; Matter of Goldfield Corp. v General *8 Host Corp., 29 NY2d 264, 269; Matter of Janaug, Inc. v Szlapka, 6 Misc 2d 84).
In this case there was no notice of the special meeting given in the union newspaper. President McGowan gave notice of the meeting by a memorandum to all officers, dated August 26, 1986, which set forth the time, place and date of the meeting. Additionally, by letter dated August 27, 1986, all officers, local presidents, and directors were given notice of the special meeting setting forth the agenda and the time, date and place of the meeting. Unfortunately, some of the union delegates are not officers, local presidents or directors, and did not receive the August 26 or August 27 communications. The only purported notice that was sent by President McGowan to all delegates was a memorandum dated September 4, 1986 which failed to set forth the time or place of the special meeting. On its face, the purported notice to delegates is defective and not in conformance with the statute by failing to set forth the time and place of the special meeting. Plaintiff Simoni has submitted an affidavit stating that he did not attend the meeting because of a lack of notice. As he did not attend, there can be no waiver of notice under Not-For-Profit Corporation Law § 606. Defendant has not produced any evidence that Simoni did receive proper notice so there is no factual dispute on that issue. Proper notice to all delegates not having been given, the meeting of September 9, 1986 is a nullity and all actions taken thereat are void.
The next issue ripe for declaration is the respective roles and powers of the board of directors vis-á-vis the delegates. At the special meeting of September 9, 1986 President McGowan distributed a memo authored by the DeGraff firm which stated that delegates of CSEA are its supreme body and can, on an individual basis, review and make final determinations regarding any actions of the board of directors. DeGrafPs position is based upon that portion of section 2 of article IV of CSEA’s constitution (quoted above) which provides the board’s authority to transact all business of the association shall be "subject to the power and authority of the delegates at meetings of the Association”. The plaintiffs’ position is that CSEA is a corporation and must abide by the provisions of the Not-For-Profit Corporation Law. Plaintiffs cite section 701 (a) of that statute which provides: "Except as otherwise provided in the certificate of incorporation, a corporation shall be managed by its board of directors”. Plaintiffs point out that CSEA’s certificate of incorporation places no restriction upon the management *9 prerogatives of the board of directors and does not contain any language giving management responsibilities to the delegates. Plaintiffs argue that under the mandate of section 701 which requires the board of directors to manage the affairs of CSEA, the appropriate interpretation of section 2, article IV of CSEA’s constitution is that the board is in charge of the general management of the union’s business subject to the powers specifically reserved for the delegates at their annual or special meetings by CSEA’s constitution or bylaws or by the provisions of the Not-For-Profit Corporation Law. The court agrees with plaintiffs’ interpretation.
Many unions operate as unincorporated associations under which President McGowan’s view of CSEA’s structure could prevail. However, the law has long been settled that once a union decides to incorporate it is subject to New York State’s statutes controlling corporate activity irrespective of any countervailing union policy (Kunze v Weber, 197 App Div 319). Not-For-Profit Corporation Law § 701 clearly and unequivocally states that a corporation, such as CSEA, is to be managed by its board of directors unless the certificate of incorporation otherwise provides, which is not the case here. The view expressed in the memorandum entitled "The Power and Authority of the Delegates of the Civil Service Employees Association”, prepared by the DeGraff firm, that the delegates can overturn any board decision on an individual basis is impractical and would wreak havoc with any third party attempting to do business with CSEA. CSEA’s board of directors has the power and duty to manage the general affairs of the corporation, and any attempt by the delegates to place general management responsibility in another person without so specifying in the certificate of incorporation would be a violation of section 701 (Polchinski Co. v Cemetery Floral Co., 79 AD2d 648; Weiss v Opportunities for Cortland County, 40 AD2d 45). On the other hand, the board of directors must conduct its management within the framework of the union’s constitution and bylaws, which constitute a contract between it and the general membership (Ballas v McKiernan, 41 AD2d 131, affd 35 NY2d 14; Republic Corp. v Carter, 22 AD2d 29, affd 15 NY2d 661). Failure of a board member or officer to comply with CSEA’s constitution and bylaws could be a ground for removal for cause.
While CSEA’s delegates do not sit as a super board of directors managing the daily activities of the union, they do have significant duties and powers. Delegates have the power, *10 among others, to: (1) adopt, amend or repeal the corporate constitution and bylaws (Not-For-Profit Corporation Law § 602; art XI of CSEA’s constitution; art VII of CSEA’s bylaws); (2) elect members of the board of directors (Not-For-Profit Corporation Law § 603); (3) remove officers or directors for cause by vote (Not-For-Profit Corporation Law §§ 706, 714); and (4) amend the certificate of incorporation (Not-For-Profit Corporation Law § 802). If the delegates want to limit the management authority of the board of directors by amending the certificate of incorporation, they can, after proper notice, vote to do so at a general or special meeting. If the delegates believe the board of directors either individually or as a group failed to abide by the union’s constitution and bylaws, they can, after proper notice, vote to remove the board of directors in whole or in part.
The final issue requiring a declaration is the respective power of the board of directors versus the president with respect to the organization and direction of CSEA’s staff. The board of directors contend that section 701 of the statute gives them full control of the management of the union, including the organizational plan for the staff. They argue that since the language in section 1 of article I of the bylaws stating that the "President shall be responsible for the organization and direction of the staff of the Association” is not set forth in the certificate of incorporation, it cannot serve to limit their power to do what they see fit with respect to the staff. Under plaintiffs’ and the board’s interpretation, the above-quoted language from section 1 of article I of the bylaws is meaningless.
Plaintiffs’ interpretation overlooks Not-For-Profit Corporation Law § 713 (e) which provides "[a]ll officers as between themselves and the corporation shall have such authority and perform such duties in the management of the corporation as may be provided in the by-laws or, to the extent not so provided, by the board”. Subdivision (a) of section 701 and subdivision (e) of section 713 must be construed in harmony. Section 701 is designed to protect the public and corporate members by placing responsibility for corporate management with the board of directors unless the certificate of incorporation states otherwise. Subdivision (e) of section 713 provides that, with respect to internal management, shareholders of the corporation through the enactment of a bylaw can assign specific authority and duties to an individual officer. That is precisely what section 1 of article I of the bylaws does by *11 directing the president to be responsible for the organization and direction of the staff. Such a specific direction does not remove or conflict with the general managerial function of a corporate board of directors as they can take the appropriate steps to suspend or remove a corporate officer who performs his assigned task in an incompetent manner (Not-For-Profit Corporation Law § 714; CSEA bylaws art V). Indeed, in this court’s experience, the organization and direction of staff in large corporations is left to the corporation’s officers, not controlled on a daily basis by the board of directors. The resolutions of the board of directors of February 27, 1986 and May 6, 1986 reorganizing CSEA’s staff in a manner inconsistent with President McGowan’s organizational plan conflict with section 1 of article I of CSEA’s bylaws and are an attempt to usurp authority given by the members to the president. As such, the resolutions must be annulled.
This decision finally resolves all issues raised by the pleadings and renders the motion for a preliminary injunction moot. Hence, the motion for a preliminary injunction will be denied, without costs.
The court will grant summary judgment, without costs, declaring that: (1) the Civil Service Employees Association, Inc. failed to give proper notice to its delegates of the special meeting of September 9, 1986, rendering that meeting and all resolutions resulting therefrom null, void, and of no effect; (2) the resolutions of the board of directors of the Civil Service Employees Association, Inc. issued on February 7, 1986 and May 6, 1986 which purport to reorganize the staff of the association in conflict with President McGowan’s organizational plan are in conflict with section 1 of article I of the union’s bylaws; were enacted without authorization, and, are null, void, and of no effect; (3) pursuant to Not-For-Profit Corporation Law § 701 and the certificate of incorporation of CSEA, Inc. and its constitution and bylaws, the board of directors of the Civil Service Employees Association, Inc. is vested with full authority to manage the affairs of CSEA, subject to the specific guidelines set forth in the constitution and bylaws and their decisions are not subject to individual review by the delegates; (4) the delegates of the Civil Service Employees Association, Inc. have the powers, among others, to amend the certificate of incorporation, constitution, and the bylaws, and to vote board members or officers out of office for cause.

. The founding partners of the Roemer firm were employed at the DeGraff firm handling the CSEA account prior to the union’s change of counsel.

. CSEA’s board of directors, not the president or delegates, has the authority to hire the corporation’s counsel (Authority to employ attorney for corporation, Ann., 130 ALR 894; but see, apparent authority of president to hire counsel in the absence of specific bylaw or board action, West View Hills v Lizau Realty Corp., 6 NY2d 344) in the absence of a specific provision in the certificate of incorporation shifting this managerial prerogative into the hands of the delegates or president (Polchinski Co. v Cemetery Floral Co., 79 AD2d 648, 649).