Rudolph D. AGOSTI, Sr.,
et al., Plaintiffs,

v.

LIBBEY–OWENS–FORD CO.,
et al., Defendants.

No. 92CV7396.

United States District Court,
N.D. Ohio,
Western Division.

Nov. 15, 1994.

Richard Kevin Greenfield, DeNune & Killam, Sylvania, OH, for plaintiffs Rudolph D. Agosti, Sr., Gaetano Ruggiero, Edward Dixon, Sammie Austin, Edward Boland, D.C. Bruno, Thomas Mathews.

Jennifer J. Dawson, Marshall & Melhorn, Toledo, OH, for defendant Libbey–Owens–Ford Co.

Thomas P. Powers, Powers & Lewis, Washington, DC, Joseph J. Allotta, Allotta & Farley, Toledo, OH, for defendants Local 9G Aluminum, Brick & Glass Workers Intern. Union, Aluminum, Brick and Glass Workers Intern. Union.

### Memorandum & Order

CARR, District Judge.

This is a suit brought by nine employees of the Plant Protection Department (PPD) of Libbey–Owens–Ford (LOF) against the Aluminum, Brick & Glass Workers, Local 9G (Local), the Brick & Glass Workers International Union A.F.L.–C.I.O., C.L.C. (International), and LOF. Pending are motions by defendants for summary judgment. For the reasons set forth below, defendants' motions shall be granted.

Plaintiffs allege four claims: 1) breach of duty of fair representation by the Local; 2) breach of duty of fair representation by the International; 3) breach of contract by LOF; and 4) breach of the Landrum–Griffin Act by the Local and the International.

The bargaining representative for the PPD was Roy Ocheske, president of the Local. During negotiations for the 1988 collective bargaining agreement between LOF and the unions, LOF informed the unions that the PPD may be eliminated.

Negotiations for the 1991 collective bargaining agreement were held in St. Louis in

August, 1990. The chief negotiator for LOF in these negotiations was Gerald Biggs. On October 25, 1991, the International, Local, and LOF entered into a collective bargaining agreement. The status of the PPD was not, however, included in this agreement, Ocheske agreed to negotiate the PPD's terms at a later date. In addition, the unions and LOF agreed that LOF would begin paying the salary of Ocheske. Previously, the company and the Local had each paid half of his salary. (Ocheske Dep. 13). Plaintiffs were not aware they were not part of the collective bargaining agreement until November 2, 1991.

On November 22, 1991, the 1991 agreement was supplemented to deal specifically with the PPD. The November 22, 1991 agreement was slightly amended on January 17, 1992. The general collective bargaining agreement covered all terms not specifically addressed by the supplemental agreements.

In early 1991, Ocheske presented two proposals, drafted by LOF, to the members of the PPD. He informed them they could choose one or he would make the decision for them. The PPD voted to choose one of the proposals. Instead of accepting the chosen proposal, Ocheske negotiated an agreement plaintiffs claim was less favorable to the PPD.

On December 9, 1991, Pinkerton non-union guards began working at LOF. The Pinkerton guards were given overtime and holiday shifts previously worked by members of the PPD. In February, 1992, plaintiffs delivered a grievance to the new Local president, James Lawniczak. The grievance charged supplemental agreements represented a breach of the collective bargaining agreement by LOF and a breach of the duty of fair representation by the union. The grievance was not processed by Lawniczak and was returned to the plaintiffs less than two hours after its submission.

█ Plaintiffs contend that LOF and the unions violated Labor Management Relations Act, 1947, § 301, 29 U.S.C. § 185. A hybrid § 301 action involves two constituent claims: breach of a collective bargaining agreement by the employer and breach of the duty of fair representation by the union. *DelCostello*

*v. Teamsters,* 462 U.S. 151, 162, 103 S.Ct. 2281, 2289, 76 L.Ed.2d 476 (1983). The two claims are inextricably interdependent. As such, to recover against LOF or the unions, the plaintiffs must demonstrate that LOF breached the collective bargaining agreement and the unions breached their duty of fair representation. *Bagsby v. Lewis Bros., Inc. of Tennessee,* 820 F.2d 799, 801 (6th Cir. 1987).

Plaintiffs allege that LOF breached the 1991 collective bargaining agreement in violation of the Labor Management Relations Act, 29 U.S.C. § 185, *et seq.,* by entering into the supplemental agreements of November 22, 1991, and January 17, 1992. Plaintiffs argue that LOF's actions violated three provisions of the collective bargaining agreement: 1) § 1(b), prohibiting actions of "subterfuge" by the company; 2) § 5 relating to seniority; and 3) § 16(a) relating to maintenance of wage rates during the life of a contract. Plaintiffs assert that the supplemental agreements had the effect of freezing plaintiffs' wages during the life of the agreement, violated their layoff recall rights based on department seniority, and that LOF's actions in entering into the agreements constituted subterfuge.

Section 1(b) of the collective bargaining agreement of 1991 provides:

> The company recognizes and will not interfere with the right of its employees to be members of the Union. There shall be no discrimination, interference, restraint, or coercion by the Company or any of its agents against any employee because of membership in the Union. The Company will not reclassify employees or duties of occupations, or engage in any subterfuge for the purpose of defeating or evading the provisions of this Agreement.

(Doc. 27, Ex. A).

Plaintiffs contend the supplemental agreements breach provisions of the collective bargaining agreement, specifically the wage and seniority clauses. LOF argues that the supplemental agreements were negotiated and § 1(b) is only applicable when the company is acting unilaterally.

844

I agree with LOF that it was entitled to negotiate the supplemental agreements which, in effect, superseded the 1991 Agreement with regard to plaintiffs' seniority rights and wage provisions. Plaintiffs' interpretation of § 1(b) would prohibit LOF and the unions from modifying an agreement. The more sensible reading of the provision is that LOF cannot unilaterally violate contracted terms. Because LOF was within its rights when it did so, the fact that the terms and conditions of the supplemental agreements may have been adverse to plaintiffs is immaterial with regard to plaintiffs' claim that LOF breached the collective bargaining agreement. *Jones v. Pepsi–Cola Bottling Co.*, 822 F.Supp. 396 (E.D.Mich.1993).

Plaintiffs also contend the negotiations leading up to the formation of the supplemental agreements involved subterfuge. The basis for the plaintiffs' claim of subterfuge is that Ocheske's salary was paid by LOF and that Ocheske was friends with LOF's principal negotiator, Biggs.

There is nothing inherently improper about the company's payment of the president's salary. It is by no means an unusual circumstance. Such payment, absent evidence to the contrary, does not indicate anything improper about the relationship between the president and the company. Likewise, the social relationship outside the negotiations between the president and company negotiator is, without more, a neutral fact from which no inference of misconduct by either party can be based. I conclude that these facts viewed in a light most favorable to plaintiffs fail to create a genuine issue of fact that the company engaged in subterfuge in the negotiations of the supplemental agreements. Because no breach of the collective bargaining agreement was involved in the negotiations leading to the November 22, 1991 agreement, plaintiffs have no claim against the company for violation of 29 U.S.C. § 185.

Plaintiffs' also claim that LOF breached § 21 of the collective bargaining agreement which provides in part that "all available work will be equally divided among regular employees in any department." (Plaintiffs' Ex. 6). Plaintiffs assert that LOF breached the Agreement when it contracted to hire Pinkerton guards beginning December 9, 1991 to work overtime and holidays.

Defendants argue that contracting with non-union guards did not conflict with the provisions in the supplemental agreements because the agreements provided for full use of contract guards beginning February 3, 1992, without prohibiting part-time use of such guards prior to that date. When an agreement is silent on the issue of subcontracting, management has the right to conduct business efficiently and subcontract so long as it is reasonable. *Sears, Roebuck & Co. v. Teamsters Local Union No. 243*, 683 F.2d 154, 156 (6th Cir.1982), *cert. denied*, 460 U.S. 1023, 103 S.Ct. 1274, 75 L.Ed.2d 495 (1983). Plaintiffs have produced no evidence indicating that LOF's subcontracting overtime and holiday work was unreasonable or in bad faith. LOF, therefore, did not breach the collective bargaining agreement when it used contract guards for overtime and holiday work.

Plaintiffs, thus, have failed to put forth sufficient evidence to create a genuine issue of material fact as to whether LOF breached the terms of the collective bargaining agreement.

Additionally, plaintiffs allege that the Local breached its duty of fair representation to the members of the PPD. The duty arises from a union's role as employees' exclusive bargaining representative in issues involving "conditions of employment." 29 U.S.C. § 159(a). Even assuming plaintiffs were successful in creating a genuine issue of fact as to whether LOF breached the collective bargaining agreement, they have been unable to produce sufficient evidence to support their assertion that the Local breached its duty of fair representation. As the Sixth Circuit recently explained in *Adcox v. Teledyne, Inc.*, 21 F.3d 1381, 1387 (6th Cir.1994):

a union breaches its duty of fair representation only if its actions are either arbitrary, discriminatory, or in bad faith; that the rule applies to all union activity; and that a union's actions, its behavior is so far outside a wide range of reasonableness as to be irrational.

(*citing Air Line Pilots Ass'n, Int'l v. O'Neill,* 499 U.S. 65, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991)).

Plaintiffs contend the Local violated its duty of fair representation to the PPD by: 1) holding separate negotiations with LOF concerning their department which led to the November 22, 1991 Agreement, and the January 17, 1992 Amended Agreement; 2) not allowing plaintiffs to vote on the agreements; 3) its refusal to accept, and perfunctorily handling of plaintiffs' February, 1992 grievance; and 4) negotiating and accepting full LOF payment of the Local president's salary.

■ Plaintiffs argue that the Local's negotiation of the PPD's agreement separately from the collective bargaining agreement was a breach of the duty of fair representation. Plaintiffs contend Ocheske should have negotiated a better agreement for the PPD and that they should have been included in the collective bargaining agreement. The only evidence that plaintiffs produce to demonstrate that Ocheske could have obtained a better agreement for the PPD are hearsay statements by plaintiffs. In addition to being inadmissible, those statements are also conclusory. For instance, Agosti claims that Biggs told him, "it is up to Roy Ocheske what will happen to you. If you want to save your jobs, see Roy Ocheske." (Agosti Aff.). Similarly, Dennis Dickerson, a Human Resource Representative for LOF, allegedly told Edward Boland that Ocheske had "carte blanche" from LOF to reach whatever agreement he wanted concerning the PPD. (Boland Aff.). Ocheske, however, did not alone dictate the terms of the agreement, but rather had to negotiate the terms with management. Plaintiffs fail to allege any facts to support their contention that Ocheske's negotiation of the supplemental agreements was arbitrary, discriminatory, or in bad faith. Plaintiffs' conclusory allegation that Ocheske could have negotiated a better deal simply is not sufficient to create a genuine issue of fact. I conclude, accordingly, that Local did not breach its duty to the plaintiffs by entering into separate agreements for the PPD department.

■ Plaintiffs also allege the Local breached its duty of fair representation by refusing to allow a ratification vote for the November, 22, 1991, and January 17, 1992, agreements in violation of the union's constitution. Section 301, however, does not provide for a claim by plaintiffs for violation of the union constitution.

■ Plaintiff cites *Wooddell v. Intern. Broth. of Elec. Workers,* 502 U.S. 93, 112 S.Ct. 494, 116 L.Ed.2d 419 (1991), for the proposition that a union member may sue his union for a violation of the union constitution under § 301. This is an incorrect interpretation of *Wooddell.* The Supreme Court held in *Wooddell* that a union member could sue the union for violation of the union constitution "only if it is charged that the breach alleged violates a contract between two labor organizations." *Id.* at 98, 99 n. 3, 112 S.Ct. at 498 n. 3. Section 301 provides for federal jurisdiction over contracts between an employer and a labor organization or between labor organizations not between members and a union. Plaintiffs' claim that the Local violated the union's constitution fails as a matter of law.

Plaintiffs further allege that the Local breached its duty of fair representation by refusing to process and perfunctorily handling the grievance submitted by plaintiffs in February, 1992. Defendants respond by asserting that the grievance was not a grievance but instead a complaint, thus a different process was required.

■ The grievance challenged: 1) LOF and the Local's having bargained the PPD separately and unfairly, with the resultant freezing of wages and benefits; 2) LOF's use of non-union contract guards; and 3) the failure of the company and Local to allow a ratification vote on the January, 1992 amended agreement. (Plaintiffs' Aff.). The 1991 Master Agreement states that the union is to receive, "any grievance or misunderstanding involving wages, hours, or working conditions." (Ex. 6, p. 4). Although these claims involve claims properly in a complaint, the allegations also involve breaches of the collective bargaining agreement by LOF. These breaches involve wages, hours and working conditions. I conclude that issues

raised in the grievance were properly raised in a grievance rather than a complaint.

■ Defendants also argue, however, that plaintiffs cannot prevail on an unfair representation claim based on the union's failure to process a grievance if the claims lack merit. Caselaw supports defendants' argument. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976). As determined above, plaintiffs' claims against LOF are meritless; therefore, there can be no breach of the duty of fair representation by the Local.

■ Plaintiffs also allege that the Local breached its duty of fair representation by negotiating and accepting full payment from LOF of the president's salary without informing plaintiffs of this agreement. As noted above, payment of a union president's salary, by itself, does not indicate arbitrariness, discriminatory conduct, or bad faith. The company's payment of that salary, moreover, benefits the union, not the president. This arrangement reduces union expenses. Furthermore, the position of president is an elected position, and, as such, the union members, not the company, control who will be president. I conclude, accordingly, that there is no genuine issue of fact demonstrating that the negotiation by the Local to have the president's salary paid by LOF was arbitrary or in bad faith.

■ Plaintiffs claim that the International breached its duty of fair representation by participating in the negotiation of the supplemental agreements. In support of these claims, plaintiffs rely on the same arguments as used in their claims against the Local. Because I have concluded that the claims against the Local have no merit, I find for the same reasons that plaintiffs do not have a claim of breach of representation against the International. As a result, it is unnecessary to address the question of whether the International, along with the Local, was responsible for the formation of the supplemental agreements.

Plaintiffs also claim that the Local's failure to permit plaintiffs to vote on the supplemental agreements was a violation of Article XV, § 1 of the International constitution, thus violating 29 U.S.C. § 411(a)(1), the Landrum–Griffin Act. The Act provides:

Equal rights. Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings and to participate in the deliberations and voting upon the business of such meetings subject to reasonable rules and regulations in such organization's constitution and by-laws.

29 U.S.C. § 411(a)(1).

The Supreme Court has held that:

Plainly, ... § 411(a)(1) is no more than a command that members and classes of members shall not be discriminated against in their right to nominate and vote. And Congress carefully prescribed that even this right against discrimination is "subject to reasonable rules and regulations" by the union.

*Calhoon v. Harvey*, 379 U.S. 134, 138–39, 85 S.Ct. 292, 295, 13 L.Ed.2d 190 (1964).

In 1982, the United Glass and Ceramic Workers Union (Glass) merged with Aluminum, Brick and Clay Workers and became the Aluminum, Brick and Glass Worker's Union. (Ocheske Dep. 25–6). The Merger Agreement provides that certain practices of Glass would be grandfathered for all Glass locals then in existence. One of these provisions was subparagraph (b) of Article 20 of the collective bargaining agreement which provides in pertinent part:

20. Any provisions of the proposed ABG Constitution (Schedule A) notwithstanding, the parties agree that the following provisions and procedures of Glass shall be "grandfathered" for all presently existing locals of Glass, notwithstanding any effort to modify such provisions and procedures by Constitutional Amendment or as a result of future merger(s). Subject to the requirements of the federal labor law, the following shall prevail:

(b) The method of negotiation and ratification of labor agreements shall continue as heretofore.

(Plaintiffs' Ex. 4).

Article 20 of the Merger Agreement has been incorporated by reference into the Con-

stitution as indicated in Article XXXIII, Section 9 as follows:

Section 9. Article 20 of the Agreement and Merger entered into July 27, 1982 between the Aluminum, Brick and Clay Workers International Union, AFL–CIO, and the United Glass and Ceramic Workers of North America, AFL–CIO, CLC, is incorporated in this Constitution by reference and made part hereof as though fully set forth.

(Plaintiffs' Ex. 1).

 Under the Merger Agreement, incorporated into the International Constitution, former Glass locals would maintain the same ratification procedures as prior to the Merger. The Glass Constitution did not provide for ratification votes by the local membership. (Ocheske Dep. 24–5; Ex. 18). Under the Glass Constitution, the president of the Local, as Wage Committeeman of the PPD, had the authority to make agreements with LOF without a ratification vote. Plaintiffs, therefore, were not denied an equal right to vote because no members of the Local were entitled to a ratification vote. *See Corea v. Welo*, 937 F.2d 1132, 1141 (6th Cir.1991). Failure to conduct a vote does not imply that there was a denial of the equal right to vote guaranteed by § 411(a)(1) unless the members are entitled to such a vote by their constitution. *Id.* There can be, accordingly, no violation of 29 U.S.C. § 411(a)(1).

Plaintiffs also argue that the unions violated the Landrum–Griffin Act by not reaching an agreement with LOF based on the terms in the proposal approved by the PPD. Plaintiffs argue that the voting process was performed arbitrarily and in bad faith. In support of this claim plaintiffs rely on *Abbington v. Dayton Malleable, Inc.*, 561 F.Supp. 1290 (S.D.Ohio 1983). In *Abbington*, the court analyzed the voting process under a breach of a duty of fair representation, not under the Landrum–Griffin Act. Therefore, plaintiff's contention does not result in a violation of the Landrum–Griffin Act.

For the foregoing reasons, it is

**ORDERED THAT** defendant LOF's motion for summary judgment shall be granted, and it is

**FURTHER ORDERED** that defendants Aluminum, Brick & Glass Workers, Local 9G's and the Brick & Glass Workers International Union A.F.L.–C.I.O., C.L.C.'s motion for summary judgment is granted.

**So Ordered.**