13 P.3d 1235

Nicanor E. CASUMPANG, Jr.,
Plaintiff–Appellant,

v.

ILWU, LOCAL 142, Defendants–
Appellees.

No. 22726.

Supreme Court of Hawai'i.

Nov. 2, 2000.

Reconsideration Denied Dec. 20, 2000.

Nicanor E. Casumpang, Jr., the plaintiff-appellant, on the briefs, pro se.

Herbert R. Takahashi and Rebecca L. Covert (of Takahashi, Masui & Vasconcellos), on the briefs, for the defendant-appellee, ILWU, Local 142.

MOON, C.J., LEVINSON, NAKAYAMA, RAMIL, and ACOBA, JJ.

Opinion of the Court by LEVINSON, J.

The plaintiff-appellant Nicanor E. Casumpang, Jr. appeals from the order of the district court of the second circuit granting the defendant-appellee ILWU (International Longshore & Warehouse Union), Local 142's (hereinafter, "the Union") motion to dismiss Casumpang's complaint for lack of subject matter jurisdiction. On appeal, Casumpang argues that the district court erred in: (1) relying on an order of the United States District Court for the District of Hawai'i, entered on June 24, 1999, which dismissed a related complaint that Casumpang had filed in federal court for failure to exhaust administrative remedies,[1] as a partial basis for dismissing his present action; and (2) ruling that the subject matter of the complaint was preempted by (a) section 403 of the Labor Management Reporting and Disclosure Act (LMRDA), codified as 29 U.S.C. § 483,[2] and (b) section 301 of the Labor Management Relations Act (LMRA), codified as 29 U.S.C. § 185.[3]

We hold: (1) that Casumpang's complaint is not precluded by the June 24, 1999 order of the United States District Court for the District of Hawai'i in *Casumpang v. International Longshore & Warehouse Union*, Civil No. 98–775 ACK [hereinafter, the "federal action"]; (2) that the LMRDA does not preempt the subject matter of Casumpang's complaint, inasmuch as his claim for relief bears, at most, a tangential relation to his eligibility for union office or the validity of a union election; and (3) that the LMRDA is not applicable to the present matter, inasmuch as Casumpang's complaint does not implicate a contract either between an employer and a union or between two unions. Accordingly, we vacate the district court's order dismissing Casumpang's complaint and remand the matter to the district court for further proceedings consistent with this opinion.

## I. BACKGROUND

Except as otherwise noted, the following facts are undisputed. Casumpang was elected a full-time business agent for the Union in 1994. He took a leave of absence from his position as a journey worker electrician to serve a term of office, which commenced on January 2, 1995 and was to continue to January 1, 1997. On April 2, 1996, the Union charged Casumpang with violating article II, section 1 of the Union's constitution, which provided in relevant part that "[e]lected and appointed full-time officials of the Local, while on the Local payroll, shall not be permitted to hold any other gainful position unless authorized by the Executive Committee with the approval of the Local Executive Board." In a proceeding conducted before the Union's "trial committee" on April 16, 1997, Casumpang stipulated that he was guilty of violating article II, section 1 of the constitution and agreed to abide by a "cease and desist" order that precluded him from

---

1. Casumpang asserts in his opening brief that the federal court matter is currently pending appeal.

2. 29 U.S.C. § 483 provides:

 **Application of other laws; existing rights and remedies; exclusiveness of remedy for challenging election**

 No labor organization shall be required by law to conduct elections of officers with greater frequency or in a different form or manner than is required by its own constitution or bylaws, except as otherwise provided by this subchapter. Existing rights and remedies to enforce the constitution and bylaws of a labor organization with respect to elections prior to the conduct thereof shall not be affected by the provisions of this subchapter. The remedy provided by this subchapter for challenging an election already conducted shall be exclusive.

3. 29 U.S.C. § 185(a) provides:

 Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

engaging in any activity as an electrical contractor unless authorized to do so by the Local Executive Committee. In late December 1997, following a November 1997 election for the office of the Union's Maui division director (in which Casumpang was nominated and ran as one of two candidates [4]), the Union began to investigate charges that Casumpang had violated the April 16, 1997 "cease and desist" order by working as an electrical contractor between May 6, 1996 and October 13, 1997. On January 7, 1998, several members of the Union filed formal written charges against Casumpang. The Union's judicial panel [5] considered the charges on January 16, 1998 and issued a decision and order on January 17, 1998. The judicial panel found that Casumpang had "knowingly and deliberately" violated both article II, section 1 and the "cease and desist" order by performing work as an electrical contractor on nine occasions between June 14, 1996 and October 27, 1997 and that he had earned $7,636.00 in 1996 for his services as an electrical contractor.[6] The decision and order provided:

1. Effective June 14, 1996 Casumpang is suspended as a member in good standing of ILWU Local 142 for a period of nine (9) consecutive years.

2. During the period of his suspension as a member in good standing of ILWU Local 142 (a period of nine years) Casumpang shall neither be eligible for nomination nor serve as an officer of ILWU Local 142 or as an officer or steward of any of the units of ILWU Local 142.

3. Effective January 7, 1998, Casumpang shall receive no further compensation as a business agent and Casumpang is hereby ordered to turn in all union office keys and all papers and property of the union on January 19, 1998 at 12:00 noon to the Secretary Treasurer of the union, or his designee.

4. Effective the date of this Decision and Order and continuing up to June 14, 2005 Casumpang shall not be permitted to serve in any appointed full-time position in ILWU Local 142.

5. Within 60 days of the date of this Decision and Order Casumpang shall pay a fine of $7,636 to ILWU Local 142.

Casumpang returned to his position as a journey worker electrician on February 3, 1998.

---

4. The record reflects that Casumpang defeated the incumbent, Rogelio Tacdol, by a vote of 2017 to 1999. However, the results of the election were challenged on the ground of voting irregularities. The election challenge was sustained and, on December 19, 1997, the Local Executive Committee ordered a "re-run" election to be conducted within forty-five days. The ILWU's president denied Casumpang's appeal of the Local Executive Committee's decision regarding the election "re-run," and Casumpang failed to appeal the president's decision to the Union's Executive Board. Casumpang's further complaint to the United States Secretary of Labor, filed on October 9, 1998, was denied on procedural grounds (amounting to untimely filing). On January 5, 1998, the Union issued a notice of Casumpang's possible ineligibility to participate in the "re-run" election by virtue of his alleged violation of article II, section 1 of the Union's constitution. In a letter dated January 14, 1998, Casumpang objected to the notice on various grounds, including that he had not in fact been employed as an electrical contractor since June 4, 1996. On June 17, 1998, the Union's "judicial panel" issued a decision, in which it found Casumpang guilty of violations of the Union's April 16, 1998 "cease and desist" order and, *inter alia*, suspended him as a member of the Union in good standing. (The judicial panel's decision is further discussed in the text of this opinion.) On January 20, 1998, the Union notified Casumpang that he was ineligible to be nominated as a candidate for election to the office of director of the Union's Maui division, insofar as he had not satisfied the Union election code's requirement that a candidate for a Union office be "a member in good standing of Local 142 for two years prior to nomination." Tacdol won the "re-run" election.

5. In a letter dated January 15, 1998, addressed to the ILWU's president, Casumpang challenged the jurisdiction of the judicial panel on the ground that the amendment to the Union's constitution that had established the judicial panel had not been validly adopted. At the same time, Casumpang challenged the validity of another amendment, which modified article II, section 1 both to clarify that the section's prohibitions applied to union business agents and to extend the scope of the prohibitions. The amendments had been adopted at the Union's convention in September 1997. The ILWU's president rejected Casumpang's challenge.

6. Casumpang denied the charges, contending that he had merely submitted electrical permit applications as favors to his friends and that the $7,636.00 in income had resulted from "cottage rentals ."

On January 23, 1998, Casumpang appealed the decision of the judicial panel to the Union's Local Executive Committee, which sustained the judicial panel's determination. On April 18, 1998, Casumpang appealed to the ILWU's president, who likewise rejected the appeal, noting that Casumpang had failed to exhaust his predicate appeal rights. Casumpang's subsequent appeal to the Union's Executive Board, dated August 14, 1998, was rejected as untimely.

On September 23, 1998, Casumpang filed the federal action against the Union, in which he alleged that he had been removed from office as the Union's business agent and suspended from its membership in retaliation for expressing his right of free speech as guaranteed by LMRDA Title I, § 101(a)(2), codified as 29 U.S.C. § 411(a)(2),[7] in order to suppress dissent within the Union. Casumpang prayed for (1) declaratory relief, (2) an order reinstating him to his former position with and as a member of the Union, (3) compensatory damages, including back pay and reimbursement for the value of lost benefits, and (4) punitive damages. On June 24, 1999, the federal district court entered an order granting the Union's motion to dismiss Casumpang's complaint for lack of subject matter jurisdiction. In doing so, the federal court construed Casumpang's complaint as implicating LMRDA Title IV, §§ 401 through 403, codified as 29 U.S.C. §§ 481 through 483,[8] rather than LMRDA Title I; accordingly, the federal court ruled that it lacked jurisdiction over the complaint, in view of the fact that the exclusive remedy for violations of LMRDA Title IV lay in an appeal to the Secretary of Labor. The federal court noted that, in a second amended complaint, filed on June 4, 1999, Casumpang

---

**7.** 29 U.S.C. § 411(a)(2) provides:

Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: Provided, that nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

**8.** 29 U.S.C. § 481 provides in relevant part:

(b) **Officers of local labor organizations; manner of election**

Every local labor organization shall elect its officers not less often than once every three years by secret ballot among the members in good standing.
. . . .
(e) **Nomination of candidates; eligibility; notice of election; voting rights; counting and publication of results; preservation of ballots and records**

In any election required by this section which is to be held by secret ballot a reasonable opportunity shall be given for the nomination of candidates and every member in good standing shall be eligible to be a candidate and to hold office (subject to section 504 of this title and to reasonable qualifications uniformly imposed) and shall have the right to vote for or otherwise support the candidate or candidates of his choice, without being subject to penalty, discipline, or improper interference or reprisal of any kind by such organization or any member thereof.

29 U.S.C. § 482 provides in relevant part:

(a) **Filing of complaint; presumption of validity of challenged election**

A member of a labor organization—

(1) who has exhausted the remedies available under the constitution and bylaws of such organization and of any parent body, or

(2) who has invoked such available remedies without obtaining a final decision within three calendar months after their invocation,

may file a complaint with the Secretary [of Labor] within one calendar month thereafter alleging the violation of any provision of section 481 of this title (including violation of the constitution and bylaws of the labor organization pertaining to the election and removal of officers). . . .

(b) **Investigation of complaint; commencement of civil action by Secretary; jurisdiction; preservation of assets**

The Secretary shall investigate such complaint and, if he finds probable cause to believe that a violation of this subchapter has occurred and has not been remedied, he shall, within sixty days after the filing of such complaint, bring a civil action against the labor organization as an entity in the district court of the United States in which such labor organization maintains its principal office to set aside the invalid election, if any, and to direct the conduct of an election or hearing and vote upon the removal of officers under the supervision of the Secretary and in accordance with the provisions of this subchapter and such rules and regulations as the Secretary may prescribe.

29 U.S.C. § 483 provides, inter alia, that the remedies provided by 29 U.S.C. § 482 are exclusive, see supra note 2.

had eliminated "references to reinstating him in his former position or otherwise overturning the contested election"; nevertheless, the court ruled as follows:

> Despite Plaintiff's amendments to his complaint and his assertions of Title I violations, the Court finds that Title IV governs the instant matter. Although Plaintiff no longer wishes to overturn the results of the 1997 rerun election, a course that would certainly run afoul of Title IV, the Court finds that the substance of Plaintiff's complaint still involves Title IV because it revolves around overturning the Union's decision to suspend him as a member in good standing and effectively means reinstating his eligibility to hold union office. This relief—having the Court reinstate him as a member in good standing—would implicitly impact the 1998 rerun election results because it would be akin to having the Court declare the Plaintiff was improperly barred from running in that election, which determination is the exclusive province of the Secretary of Labor.
>
> . . . .
>
> Conversely, the Court finds that Defendants have provided more than adequate evidence to corroborate their contention that the decision to discipline Plaintiff was made in accordance with their powers under Title IV of the LMRDA and was not made to suppress dissent within the Union. As detailed above in the Court's factual summary, Plaintiff was disciplined because he was found guilty of working as an electrical contractor while serving as a business agent, a violation of the Union constitution that required that he be "suspended from office forthwith." . . . Thus, in the absence of some evidence that the Union has applied its membership requirements against the Plaintiff in a discriminatory fashion, the Court finds that Plaintiff has not been disciplined within the meaning of Title I.

Finally, the federal district court concluded that, even if it were to construe Casumpang's complaint as arising under LMRDA Title I, it would still dismiss the complaint, inasmuch as Casumpang had failed to exhaust the Union's internal appeal procedures.

In the meantime, on October 13, 1998, Casumpang filed the present action in the district court of the second circuit. He fashioned his claim for relief as one in assumpsit for $5,688.24 allegedly owed him by the Union as vacation pay. On November 30, 1998, the Union filed an answer—in which it denied Casumpang's allegations—and a counterclaim—in which it asserted that Casumpang had failed to pay the $7,636 fine that the Union had imposed on him—and prayed (1) that, if Casumpang's complaint were not dismissed, then any award in his favor be offset by the amount of the fine and (2) for a judgment in the Union's favor in the amount of $7,636, together with costs and expenses.

On March 8, 1999, the Union filed a motion for summary judgment as to both Casumpang's complaint and its counterclaim. The Union argued (1) that Casumpang owed and had not paid the fine and (2) that Casumpang requested a vacation on March 20, 1998, when he was no longer the Union's employee, and had not followed the Union's procedures in receiving cash in lieu of vacation. Casumpang argued, in opposition to the Union's motion, (1) that the fine that the Union had imposed on him was illegal, (2) that the Union's decision to suspend him as a member in good standing resulted in its internal procedures no longer applying to him, and (3) that any attempt on his part to resort to the Union's internal remedies for obtaining the vacation pay would have been futile.

The district court heard the Union's motion on May 3, 1999. On May 13, 1999, the district court entered an order denying the Union's motion on the ground that there remained genuine issues of material fact as to whether the fine imposed on Casumpang had been properly levied and whether Casumpang was entitled to vacation pay.

On June 18, 1999, the Union filed a motion to dismiss Casumpang's complaint for lack of subject matter jurisdiction, pursuant to District Court Rules of Civil Procedure (DCRCP) Rule 12(b)(1) (2000),[9] on the ground of federal preemption, specifically,

---

**9.** DCRCP Rule 12(b)(1) provides in relevant part that "[e]very defense . . . may be asserted in the responsive pleading . . . except that the following

defenses may at the option of the pleader be

the LMRDA and LMRA. One week later, the Union supplemented its motion with an exhibit consisting of federal district court's order dismissing Casumpang's complaint. During the district court's June 28, 1999 hearing of the Union's motion, the following colloquy ensued:

THE COURT: Well, we—the Court has, as you can—as—judging from the thickness of the file, Mr. Takahashi, the court has taken the position, hey, isn't this, at the very least, a prior action pending in the federal court.

MR. TAKAHASHI [ (the Union's counsel) ]: Yes.

THE COURT: And that we, as a result then, should not proceed with the claim filed by Mr. Casumpang in this courtroom. Has that issue now been resolved?

MR. TAKAHASHI: Yes, and we—

THE COURT:—in the federal court?

MR. TAKAHASHI: Yes. And we filed a—the order of Judge Kay in which he dismissed the claim on grounds that Mr.. Casumpang should have filed an administrative complaint in time with the Department of Labor for violation of the LMRDA (phonetic) under Title IV.

THE COURT: In other words, like failure to exhaust administrative remedies?

MR. TAKAHASHI: Yes. And he—having failed to do so, the Court found that it lacked jurisdiction to act on that complaint and could not proceed on the federal question, even though it's governed by federal law.

THE COURT: And that—that dismissal then gives finality to the fine imposed on Mr. Casumpang.

MR. TAKAHASHI: Yes, it does. As well as the suspension from membership, as well as the preclusion from any receipt of compensation.

THE COURT: Including vacation?

MR. TAKAHASHI: That's correct.

THE COURT: Ms. Cooper?

. . . .

THE COURT: The question, though, is whether or not we have jurisdiction to grant you the relief, or your client the relief that he's asking in view of the judgment in the Federal District Court?

made by motion: (1) lack of jurisdiction over the

MS. COOPER [ (Casumpang's counsel) ]: Your Honor, I think this Court would very well grant my client relief if we were given an opportunity to go to trial and show your Honor how my client's vacation pay was legitimately accumulated and is now owed to him. It's their cross-complaint that—that—

THE COURT: Ms. Cooper, I'm not faulting you, because I know that you just—you and Ms. Yanagida just recently entered the case. But when he was representing himself in this courtroom, I kept asking him, you have a federal action pending in the district court, isn't this where this one, your claim belongs, you know. And apparently he did nothing. He could have, in the months prior to the recent decision, could have amended his complaint, made a claim for the vacation.

And that's—and I agree that this is a jurisdictional issue and that we don't have jurisdiction. One, we don't have jurisdiction in the light of the federal proceedings. And secondly, as a result of the federal case and the decision rendered therein, we're further without jurisdiction to give your client any remedy. Okay?

So I'm going to grant the motion to dismiss.

Accordingly, on July 12, 1999, the district court entered an order granting the Union's motion to dismiss, which read in part as follows:

The Court finds and concludes that the subject matter of the dispute is preempted by 29 U.S.C § 483 of the [LMRDA], and 29 U.S.C. § 185 of the [LMRA]. The Order Granting Defendants' Motion to Dismiss in *Casumpang v. International Longshore & Warehouse Union, Local 142, et al.;* Civil No. 98–775, entered by the Honorable Alan Kay in the United States District Court for the District of Hawai[']i on June 24, 1999 determined that the substance of Casumpang's complaint is governed by Title IV of the LMRDA. Casumpang failed to exhaust administrative remedies with the U.S. Secretary of Labor which were available under Title IV of the LMRDA and the remedies therein are exclusive. See 29

subject matter[.]"

U.S.C. § 483. Moreover, the issues in this case require an interpretation of Article II, Section 1 of the Constitution of the ILWU and is [sic] pre-empted by 29 U.S.C. § 185. *Wooddell v. International Brotherhood of Electrical Workers*, 502 U.S. 93, 101, 112 S.Ct. 494, 116 L.Ed.2d 419 (1991).

Proceeding *pro se*, Casumpang filed a timely notice of appeal on July 22, 1999. The Union, contesting appellate jurisdiction, filed a motion to dismiss Casumpang's appeal on the ground that the district court had failed to enter a final judgment in the present matter pursuant to Hawai'i Rules of Civil Procedure (HRCP) Rule 58 (2000). We denied the Union's motion in a published opinion. *See Casumpang v. ILWU, Local 142,* 91 Hawai'i 425, 984 P.2d 1251 (1999).

## II. *STANDARD OF REVIEW*

█ A trial court's dismissal for lack of subject matter jurisdiction is a question of law, reviewable *de novo*. *McCarthy v. United States,* 850 F.2d 558, 560 (9th Cir. 1988), *cert. denied,* 489 U.S. 1052, 109 S.Ct. 1312, 103 L.Ed.2d 581 (1989); *see also Moir v. Greater Cleveland Regional Transit Auth.,* 895 F.2d 266, 269 (6th Cir.1990). Moreover, we adopt the view of the Ninth Circuit Court of Appeals in *Love v. United States,* 871 F.2d 1488 (9th Cir.1989):

> Our review [of a motion to dismiss for lack of subject matter jurisdiction] is based on the contents of the complaint, the allegations of which we accept as true and construe in the light most favorable to the plaintiff. Dismissal is improper unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

*Id.* at 1491, 984 P.2d 1251 (citations omitted). However, "when considering a motion to dismiss pursuant to Rule 12(b)(1) the [trial] court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy,* 850 F.2d at 560 (citations omitted); *see also* 5A

C. Wright & A. Miller, *Federal Practice and Procedure* § 1350, at 213 (1990). *Norris v. Hawaiian Airlines, Inc.,* 74 Haw. 235, 239–40, 842 P.2d 634, 637 (1992) (brackets in original). Although the defendants in *Norris* moved the circuit court to dismiss for lack of subject matter jurisdiction pursuant to HRCP Rules 12(b)(1), DCRCP Rule 12(b)(1), *see supra* note 9, is substantially identical, and, accordingly, we apply the same standard of review to the district court's decision in the present matter.

## III. *DISCUSSION*

For purposes of this appeal, we assume that the pivotal factual allegation in Casumpang's complaint—*i.e.,* that the Union owed him $5,688.24 on account of accrued and unpaid vacation benefits pursuant to Casumpang's express or implied contract of employment as the Union's business agent—is true. *See Norris,* 74 Haw. at 240, 842 P.2d at 637. The Union does not appear to contest that Casumpang had accumulated vacation benefits by the time he was discharged from its employ, but it does deny any legal obligation to pay Casumpang. Thus, the issue before us is whether the district court possessed subject matter jurisdiction to adjudicate the merits of Casumpang's claim that he was entitled to payment. In ruling that it lacked jurisdiction, the district court relied on the doctrine of federal preemption of state law and the fact that Casumpang had also pursued the federal action, which had been dismissed.

### A. *The Federal Action*

█ As an preliminary matter, the initiation and subsequent dismissal of the federal action did not divest the district court of subject matter jurisdiction over Casumpang's state court claim. While the Federal Rules of Civil Procedure (FRCP) might have allowed Casumpang to join a common law contract claim for earned but unpaid vacation benefits with his claims predicated on violations of federal labor law in the federal action, the joinder would have been permissive rather than compulsory. *See* FRCP Rule 18(a); [10] *see also Leimer v. Woods,* 196 F.2d

---

10. FRCP Rule 18(a), entitled "Joinder of Claims," provides that "[a] party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim *may* join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party

828, 833 (8th Cir.1952) ("[J]oinder of causes of action in federal practice has its source in [FRCP] Rule 18(a), ... which permits and encourages the practice but does not compel it."). Thus, the mere fact that Casumpang did not pursue his common law contract claim in the federal action in conjunction with the federal labor law claims did not preclude him from pressing the former in the state court.[11]

Moreover, inasmuch as the federal district court did not decide the merits of any of the material issues raised in Casumpang's state court action presently before us, the district court was not precluded from reaching them by virtue of the doctrine of collateral estoppel.

[T]he doctrine of collateral estoppel bars relitigation of an issue where: (1) *the issue decided in the prior adjudication is identical to the one presented in the action in question;* (2) there is a final judgment on the merits; (3) the issue decided in the prior adjudication was essential to the final judgment; and (4) the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication.

*Citizens for Protection of North Kohala Coastline v. County of Hawai'i,* 91 Hawai'i 94, 102, 979 P.2d 1120, 1128 (1999) (quoting *Dorrance v. Lee,* 90 Hawai'i 143, 149, 976 P.2d 904, 910 (1999)) (some brackets added and some omitted) (emphasis added).

In the federal action, Casumpang claimed that the Union's conduct resulting in his removal from office and suspension as a un-

ion member violated his right of free speech as guaranteed by LMRDA Title I. The federal district court, however, construed Casumpang's complaint as implicating a union election dispute, and, therefore, ruled that it was barred by the exclusive remedy provision of 29 U.S.C. § 483, *see supra* notes 2 and 8.

By contrast, the common law contract claim that Casumpang asserts in the present state court action is conceptually distinct from the question of Casumpang's eligibility to run for and hold elective office within the Union. The exclusiveness of the remedy prescribed by 29 U.S.C. § 483, *see supra* notes 2 and 8, Casumpang's failure to exhaust internal Union remedies regarding alleged violations of LMRDA Title I, and Casumpang's failure to prove that the Union's conduct was calculated either to discriminate against him or to suppress dissent within the Union—the issues deemed outcome-dispositive in the federal action—were anything but "identical" to the issues material to the present state court action. Indeed, a judgment in Casumpang's favor on his common law contract claim in the present state court action could not possibly affect his present status as a union member or his eligibility to run for office in a union election.

In short, the claims for relief that Casumpang asserted in the federal and state courts and the remedies that he sought were different, and there is a lack of identity between the issues adjudicated in the federal action and the question at issue in the present state court action, *i.e.,* whether Casumpang is owed vacation pay. That being the case, we

---

has against an opposing party." (Emphasis added.)

11. In the federal action, Casumpang prayed, *inter alia,* for compensatory damages, including back pay and reimbursement for the value of lost benefits, which, presumably, would have encompassed accrued vacation benefits. Had he prevailed in the federal action and obtained the relief sought, any monetary award would have served as a credit against any award that Casumpang might obtain in the state court action, and *vice versa. See Quinn v. DiGiulian,* 739 F.2d 637 (D.C.Cir.1984) (double recovery was avoided by subtracting back pay award obtained in unfair labor practices action before National Labor Relations Board from compensatory and punitive damages awarded by federal district court in action for damages arising out of the same con-

duct under 29 U.S.C. § 411, *see supra* note 7, in action by union member against union alleging that, when he announced his decision to run as candidate for union business agent against incumbent, he became target of campaign of harassment—including trumped-up disciplinary charges, fines, and suspension from union—culminating in his discharge from his job); *see also Sun Ship, Inc. v. Pennsylvania,* 447 U.S. 715, 100 S.Ct. 2432, 65 L.Ed.2d 458 (1980) (holding that states may apply their workers' compensation laws to land-based injuries that fall within coverage of Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901 through 950, and "there is no danger of double recovery under concurrent jurisdiction since employers' awards under one compensation scheme would be credited against any recovery under the second scheme").

hold that the district court does not lack subject matter jurisdiction over the state court matter on appeal simply because the federal court determined that it lacked jurisdiction to adjudicate the federal action.

B. *Labor Management Disclosure and Reporting Act*

 The district court's order granting the Union's motion to dismiss Casumpang's complaint was premised in part upon the court's "find[ing] and conclu[sion] that the subject matter of the dispute is preempted by 29 U.S.C. § 483 of the [LMRDA]." We agree with Casumpang that the district court erred in this respect.

"[T]he historic police powers of the States [are] not to be superseded by ... Federal Act unless that [is] the clear and manifest purpose of Congress." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)) (brackets in original). Indeed, the question of whether a certain state action is preempted by federal law is one of congressional intent. Accordingly, the purpose of Congress is the "ultimate touchstone." *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 138, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990) (quoting *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 208, 105 S.Ct. 1904, 1909–10, 85 L.Ed.2d 206 (1985) (quoting *Malone v. White Motor Corp.*, 435 U.S. 497, 504, 98 S.Ct. 1185, 1189–90, 55 L.Ed.2d 443 (1978))).

*Ditto v. McCurdy*, 90 Hawai'i 345, 351, 978 P.2d 783, 789 (1999) (quoting *Hawai'i Laborers' Trust Funds v. Maui Prince Hotel*, 81 Hawai'i 487, 492, 918 P.2d 1143, 1148 (1996)) (brackets and ellipsis points in original).

In *Gouveia v. Napili–Kai, Ltd.*, 65 Haw. 189, 192, 649 P.2d 1119, 1122 (1982), *cert. denied*, 461 U.S. 904, 103 S.Ct. 1873, 76 L.Ed.2d 806 (1983), we stated that "there is no unerring test to determine just when ... [state law] is without effect by reason of [federal] preemption." We further noted that a federal purpose to displace state law could be evidenced in one of several ways:

" 'The scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it. Or the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.... Or the state policy may produce a result inconsistent with the objective of the federal statute.' " And, "[o]f course, a state statute is void to the extent it conflicts with a federal statute—if, for example, 'compliance with both federal and state regulations is a physical impossibility[.]' "

*Id.* at 192, 649 P.2d at 1122–23 (citations omitted)....

*Kaneohe Bay Cruises, Inc. v. Hirata*, 75 Haw. 250, 266, 861 P.2d 1, 9–10 (1993) (brackets and ellipsis points in original) (emphasis omitted).

 Traditionally, federal preemption cases have been grouped into three categories: (1) express preemption; (2) implied preemption; and (3) conflict preemption.[12] *See, e.g., Screen Extras Guild, Inc. v. Superior Court*, 51 Cal.3d 1017, 275 Cal.Rptr. 395,

---

**12.** First, when acting within constitutional limits, Congress is empowered to pre-empt state law by so stating in express terms. Second, in the absence of express pre-emptive language, Congress' intent to pre-empt all state law in a particular area may be inferred where the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress left no room for supplementary state regulation. Pre-emption of a whole field also will be inferred where the field is one in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject. Finally, where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law. Such a conflict arises when compliance with both federal and state regulations is a physical impossibility, or when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress[.]

*People v. Hegedus*, 432 Mich. 598, 443 N.W.2d 127, 131 n. 10 (1989) (citing *Hillsborough Co. v. Automated Medical Labs., Inc.*, 471 U.S. 707, 713, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985)) (brackets and internal quotation marks omitted).

800 P.2d 873, 876 n. 3 (1990); *People v. Hegedus,* 432 Mich. 598, 443 N.W.2d 127, 131 (1989); *Aurora Medical Group v. Department of Workforce Dev., Equal Rights Div.,* 236 Wis.2d 1, 612 N.W.2d 646, 652 (2000). "The burden of establishing pre-emption rests with the party seeking the benefit of pre-emption. . . . That burden is a 'considerable' one, which requires 'overcoming the starting presumption that Congress does not intend to supplant state law.'" *Aurora,* 612 N.W.2d at 652 (quoting *De Buono v. NYSA–ILA Med. and Clinical Serv. Fund,* 520 U.S. 806, 814, 117 S.Ct. 1747, 138 L.Ed.2d 21 (1997)) (other citations omitted) (some internal quotation marks omitted).

As regards the LMRDA, "[i]t is clear that Congress did not intend to occupy the entire field of regulation, as the text of LMRDA explicitly makes reference to continued viability of state laws." *O'Hara v. Teamsters Union Local # 856,* 151 F.3d 1152, 1161 (9th Cir.1998) (citing 29 U.S.C. § 523, *see infra* note 13). Indeed, "Congress expressly provided two broad anti-preemption provisions in the LMRDA in response to objections initially raised by then Sen. John F. Kennedy (D–Mass.)." *Fulton Lodge No. 2 of Int'l Ass'n of Machinists and Aerospace Workers, AFL–CIO v. Nix,* 415 F.2d 212, 215 (5th Cir.1969) (footnotes omitted).[13] 29 U.S.C. § 523(a) of the LMRDA is "an express disclaimer of pre-emption of state laws regulating the responsibilities of union officials, except where such pre-emption is expressly provided." *Brown v. Hotel & Restaurant Employees Local No. 54,* 468 U.S. 491, 505–06, 104 S.Ct. 3179, 82 L.Ed.2d 373 (1984) (citation omitted).

The only express provisions of the LMRDA that foreclose the jurisdiction of the courts, both federal and state, are 29 U.S.C. §§ 481 through 483, which provide in relevant part that "[t]he remedy . . . for chal-lenging an election [of union officers] shall be exclusive[ly]" pursued through the Secretary of Labor, *see supra* notes 2 and 8. In particular, a dispute concerning the eligibility of a candidate for union office must be resolved by way of the administrative procedures prescribed by LMRDA Title IV, *see supra* note 8. *Calhoon v. Harvey,* 379 U.S. 134, 141, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964).

Casumpang's state law claim for unpaid vacation benefits obviously does not involve such a dispute. Although his claim apparently results from his discharge as a union business agent, following a disciplinary action that culminated in his suspension as a union member, which in turn caused his disqualification for election to union office, the claim nevertheless has no direct bearing upon either the validity of the Union's election or Casumpang's eligibility as a candidate. After all, Casumpang disclaims any challenge to his discharge in the present action.

■ As an incidental matter, however, it may be factually relevant whether the Union's constitution permitted the withholding of Casumpang's compensation, which may involve an inquiry into some aspects of the Union's disciplinary action against Casumpang. Nevertheless,

> it can only rarely be said that the enforcement of state laws is precluded simply because it tends of necessity to affect the regulated conduct. . . . [T]he preemption question cannot be resolved with reference to the possible incidental effects of state action. Rather, it is the purpose of state action that governs the express preemption inquiry.

*Hegedus,* 443 N.W.2d at 133 (citing *People v. Chicago Magnet Wire Corp.,* 126 Ill.2d 356, 128 Ill.Dec. 517, 534 N.E.2d 962, 966 (1989) ("We cannot accept the defendants' conten-

---

**13.** 29 U.S.C. § 413 provides:
 **Retention of existing rights of members**
 Nothing contained in this subchapter shall limit the rights and remedies of any member of a labor organization under any State or Federal law or before any court or other tribunal, or under the constitution and bylaws of any labor organization.
 29 U.S.C. § 523(a) provides:
 *Except as explicitly provided to the contrary,* nothing in this chapter shall reduce or limit the responsibilities of any labor organization or any officer, agent, shop steward, or other representative of a labor organization, or of any trust in which a labor organization is interested, under any other Federal law or under the laws of any State, and, except as explicitly provided to the contrary, nothing in this chapter shall take away any right or bar any remedy to which members of a labor organization are entitled under such other Federal law or law of any State.

tion that it must be concluded that Congress intended to preempt the enforcement of State criminal laws in regard to conduct of employers in the workplace because the State criminal laws implicitly enforce occupational health and safety standards.")).

Thus, the United States Supreme Court has stated that "[t]he exclusivity provision of [LMRDA] Title IV may not bar post-election relief for Title I claims or other actions that do not directly challenge the validity of an election already conducted." *Local No. 82, Furniture and Piano Moving, Furniture Store Drivers, Helpers, Warehousemen and Packers v. Crowley*, 467 U.S. 526, 541 n. 16, 104 S.Ct. 2557, 81 L.Ed.2d 457 (1984).

*Crowley* has been cited as recognizing an exception to the exclusivity provision of LMRDA. *See Haas v. Freight, Construction, General Drivers, Warehousemen and Helpers, Local No. 287*, 832 F.Supp. 283, 286 (N.D.Cal.1993) ("The *Crowley* case recognizes an exception to this provision. Title IV may not bar post-election relief for Title I claims or other actions that do not directly challenge the validity of an election already conducted. *Id.* at 541, 104 S.Ct. at 2566."); Laughran, *Contesting Misuse of Union Funds in Union Election Challenges: Expanded Remedies Under Title V of the Labor–Management Reporting and Disclosure Act*, 22 Colum. J.L. & Soc. Probs. 181, 211 (1989) ("Although the exclusive jurisdiction prescribed in section 403 bars post-election private suits challenging election results, courts should entertain private actions where the plaintiff merely seeks an accounting or damages for misappropriation. The Court in *Crowley* hinted that post-election private suits would be appropriate, as long as they did not directly challenge the validity of prior elections."). In its footnote sixteen, the *Crowley* Court, in turn, expressly cited *Ross v. International Brotherhood of Electrical Workers*, 513 F.2d 840 (9th Cir.1975), with approval, characterizing it as a "common-law tort claim." *Crowley*, 467 U.S. at 541 n. 16, 104 S.Ct. 2557. The following language from *Ross* is particularly germane to our analysis:

> ... [T]he considerations apparently prompting Congress to choose the remedy it chose in ... preventing the blocking or delaying of elections by actions brought by individual members have nothing to do

with, and are not frustrated by, the recovery of monetary damages for election-related torts. We perceive no public purpose to be served by prohibiting all civil actions to that end where challenge to the election is not involved and is not the result.

> We conclude that Title IV of the LMRDA ... do[es] not deprive the district court of jurisdiction to entertain this tort claim.

*Ross*, 513 F.2d at 843 (footnote omitted).

The only relief that Casumpang seeks in the pending state court action is the payment of vacation benefits that he is allegedly owed. Accordingly, Casumpang's state law assumpsit claim does not directly challenge the validity and cannot affect the outcome of the Union's election. *See Crowley*, 467 U.S. at 541 n. 16, 104 S.Ct. 2557. For the reasons discussed *supra*, we do not construe 29 U.S.C. § 483 to preclude a state court from adjudicating Casumpang's assumpsit claim for the recovery of monetary damages against the Union. Consequently, we hold that Casumpang's state court action does not "basically relat[e] to eligibility of candidates for [union] office," *Calhoon*, 379 U.S. at 141, 85 S.Ct. 292, and, therefore, is not forbidden by LMRDA's exclusivity provision relating to jurisdiction.

As a final matter, the Union argues that Casumpang's state court action is precluded by the LMRDA to the extent that it pertains to the conditions of employment of a management level union employee. It relies on a line of cases, beginning with *Finnegan v. Leu*, 456 U.S. 431, 102 S.Ct. 1867, 72 L.Ed.2d 239 (1982), generally holding that LMRDA preempts state law claims for relief that are predicated upon the allegedly wrongful discharge of appointed policymaking union employees, who have been removed by the union leadership for political reasons. The *Finnegan* court first articulated the rationale for restricting the remedies available to discharged union *appointees*, further to its holding that union business agents, who had been appointed by and had campaigned for a union president and against a challenger (who subsequently won the union's presidential election and discharged them), could not main-

tain an action for violation of their right to freedom of speech as guaranteed by LMRDA Title I. In particular, the *Finnegan* court stated:

> No doubt this poses a dilemma for some union employees; if they refuse to campaign for the incumbent they risk his displeasure, and by supporting him risk the displeasure of his successor. However, in enacting Title I of the Act, Congress simply was not concerned with perpetuating appointed union employees in office at the expense of an elected president's freedom to choose his own staff. Rather, its concerns were with promoting union democracy, and protecting the rights of union members from arbitrary action by the union or its officers.

*Id.* at 442, 102 S.Ct. 1867 (emphasis omitted). *Cf. Sheet Metal Workers' Int'l Ass'n v. Lynn,* 488 U.S. 347, 352–56, 109 S.Ct. 639, 102 L.Ed.2d 700 (1989) (*Finnegan* rationale does not apply to LMRDA Title I claims of *elected* union officials).

Although *Finnegan* did not did not directly implicate the doctrine of preemption, the California Court of Appeal, in *Tyra v. Kearney,* 153 Cal.App.3d 921, 200 Cal.Rptr. 716 (1984), expressly relied upon it in holding that the LMRDA preempted the state law wrongful discharge suit of an appointed union business agent, who had been discharged by an elected union official whom the business agent had challenged in a union election. The *Tyra* court noted the "paradox of denying a wrongful termination cause of action to [a union employee,] yet allowing it for private sector employers," but felt "compelled to follow the dictates of the Supreme Court['s *Finnegan* decision]." *Id.* at 719 n. 6. The California Supreme Court approved and extended *Tyra* in *Screen Extras Guild, Inc. v. Superior Court,* 51 Cal.3d 1017, 275 Cal.Rptr. 395, 800 P.2d 873 (1990), holding that the LMRDA preempted a former union business agent's state law claim of wrongful discharge, infliction of emotional distress, and defamation, even though the alleged reasons for the agent's discharge were unrelated to union elections or union policy.

Following *Tyra* and *Screen Extras Guild,* several courts have at least recognized the federal interest in allowing union leaders to discharge incumbent administrators. *See,* *e.g., Bloom v. General Truck Drivers, Office, Food & Warehouse Union, Local 952,* 783 F.2d 1356 (9th Cir.1986) (holding, where former union employee's wrongful termination claim alleges that he had been discharged for refusing to violate state law, that the state's interest in enforcing its criminal laws outweighed the federal interest in promoting union democracy and, therefore, that the state law claim was not preempted); *Montoya v. Local Union III of the Int'l Bhd. of Elec. Workers,* 755 P.2d 1221 (Colo.Ct.App. 1988) (adopting *Tyra* except insofar as *Bloom* exception applies); *Young v. International Bhd. of Locomotive Engineers,* 114 Ohio App.3d 499, 683 N.E.2d 420, 423 (1996) (ruling that whether a union employee's state law breach of employment contract claim was "preempted by [the LMRDA] turns on the factual issue of whether [the plaintiff] was a policy-making or confidential employee. A purely clerical employee, such as a secretary/bookkeeper, is not the type of employee to whom preemption applies").

Contrary to the position urged by the Union, inasmuch as Casumpang was an *elected* official of the Union, the teaching of *Finnegan* and its progeny is inapposite to him. *Sheet Metal Workers' Int'l Ass'n,* 488 U.S. at 352–56, 109 S.Ct. 639. Moreover, *Tyra, Screen Extras Guild,* and their progeny addressed claims for relief that were grounded in wrongful termination. In light of the fact that Casumpang's pending state law action asserts a pure assumpsit claim, it is distinguishable. The concerns that a "state claim would allow another forum to restrict the exercise of the right to terminate," *Tyra,* 200 Cal.Rptr. at 719, in contravention of the policy objectives of federal labor law, are not implicated here.

We hold that the LMRDA does not preempt Casumpang's state law action at issue in this appeal.

## C. *Labor Management Relations Act*

▮ The district court further premised its order granting the Union's motion to dismiss Casumpang's complaint in part upon the fact that its resolution would require an interpretation of the Union's constitution. On appeal, the Union renews its argument,

which the district court accepted, that such a claim is preempted by section 301 of the LMRA, codified as 29 U.S.C. § 185, *see supra* note 3.

If Congress intends that a federal statute "completely preempt" an area of state law, any complaint alleging claims under that area of state law is presumed to allege a claim arising under federal law. *See Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63–64, 107 S.Ct. 1542, 1546–47, 95 L.Ed.2d 55 (1987). It is now well-settled that the Labor Management Relations Act, 29 U.S.C. § 185(a), is one such statute intended by Congress to have comply [sic] preemptive force. *Avco Corp. v. Aero Lodge No. 735,* 390 U.S. 557, 559–60, 88 S.Ct. 1235, 1237, 20 L.Ed.2d 126 (1968). *See also, Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 23–25, 103 S.Ct. 2841, 2854, 77 L.Ed.2d 420 (1983); *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987).

*Haber v. Chrysler Corp.,* 958 F.Supp. 321, 327 (E.D.Mich.1997).

The Supreme Court has recognized that the preemptive force of section 301(a) is applicable not only to state law claims dependent upon analysis of a collective bargaining agreement [14] but also to certain state law claims that are based upon provisions of a union constitution. As mentioned, section 301(a) creates federal court jurisdiction for both cases involving "violations of contracts between an employer and a labor organization," and lawsuits "between any such labor organizations." *See* 29 U.S.C. § 185(a). This reference to intra-union disputes led the Supreme Court to hold in *United Ass'n of Journeymen & Apprentices v. Local 334,* 452 U.S. 615, 101 S.Ct. 2546, 69 L.Ed.2d 280 (1981) (*"Journeymen"*) that section 301(a) provides a basis for federal court jurisdiction when a local union sues its parent international union for violations of the international constitution. In reaching this decision, the *Journeymen* Court determined that "a union constitution is a 'contract' within the plain meaning of § 301(a)." 452 U.S. at 622, 101 S.Ct. at 2550....

The *Journeymen* Court explicitly reserved the question whether section 301(a) creates federal court jurisdiction over suits brought by individual union members against their union for breach of the union constitution. *See* 452 U.S. at 627 n. 16, 101 S.Ct. at 2553....

*DeSantiago v. Laborers Int'l Union of North America, Local No. 1140,* 914 F.2d 125, 128 (8th Cir.1990).

In *Wooddell v. International Brotherhood of Electrical Workers, Local 71,* 502 U.S. 93, 112 S.Ct. 494, 116 L.Ed.2d 419 (1991), the United States Supreme Court answered the question expressly "reserved" in *Journeymen* as follows:

Congress expressly provided in § 301(a) for federal jurisdiction over contracts between an employer and a labor organization or between labor organizations. Collective-bargaining agreements are the principal form of contract between an employer and a labor organization. Individual union members, who are often the beneficiaries of provisions of collective-bargaining agreements, may bring suit on these contracts under § 301. Likewise, union constitutions are an important form of contract between labor organizations. Members of a collective-bargaining unit are often the beneficiaries of such inter-union contracts, and when they are, they likewise may bring suit on these contracts under § 301.

*Id.* at 500.

Subsequently, the United States Court of Appeals for the Seventh Circuit, through

---

**14.** However, as the Supreme Court stated in *Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), "not every dispute tangentially involving a provision of a collective-bargaining agreement is preempted by § 301." 471 U.S. at 211, 105 S.Ct. at 1911. It is only if resolution of a state law claim requires the interpretation of a collective bargaining agreement that the state law claim is preempted. *Lingle v. Norge Division of Magic Chef Inc.,* 486 U.S. 399, 411–13, 108 S.Ct. 1877, 1885, 100 L.Ed.2d 410 (1988). When liability is governed by independent state law, the mere fact that a collective bargaining agreement will be consulted or referred in the course of state-law litigation does not require the claim to be extinguished under Section 301. *Livadas v. Bradshaw,* 512 U.S. 107, 122–26, 114 S.Ct. 2068, 2078–79, 129 L.Ed.2d 93 (1994).

*Haber,* 958 F.Supp. at 327.

Chief Judge Posner, made the following relevant observations:

A simple employment contract is not within the scope of section 301, even when the employer is a union, *Kunz v. United Food & Commercial Workers,* 5 F.3d 1006, 1009 (6th Cir.1993), for it is neither a contract between an employer and a labor organization nor a contract between two labor organizations. Union constitutions have been held to be contracts within the scope of section 301 and members of the union held entitled to sue to enforce the contract-constitution as third-party beneficiaries. *United Ass'n of Journeymen & Apprentices v. Local 334,* 452 U.S. 615, 101 S.Ct. 2546, 69 L.Ed.2d 280 (1981); *Wooddell v. International Brotherhood of Electrical Workers,* 502 U.S. 93, 112 S.Ct. 494, 116 L.Ed.2d 419 (1991); *Shea v. McCarthy,* 953 F.2d 29, 30–31 (2d Cir.1992). But in each of these cases it was the constitution of an international union that was at issue, and an international union is plausibly conceived of as a contractual union of its locals. *Wooddell* and *Shea* do not emphasize the international character of the unions whose constitutions were in issue in those cases, but it is plain from the *Journeymen* case, which established the principle that a union's constitution can be a contract between labor organizations within the meaning of section 301, that the basis for it is the fact that an international's constitution is a contract between the international and its locals. 452 U.S. at 620–23, 101 S.Ct. at 2549–51. The constitution of a local union, in contrast, is a contract between the union and its members, *Talton v. Behncke,* 199 F.2d 471, 473 (7th Cir.1952); *Simoni v. Civil Service Employees Ass'n, Inc.,* 133 Misc.2d 1, 507 N.Y.S.2d 371, 377 (1986), in the same way that a corporate charter is a contract between the corporation and its shareholders (as well as between the state and the corporation and among the shareholders). *Staar Surgical Co. v. Waggoner,* 588 A.2d 1130, 1136 (Del.1991). *A suit on a contract between a labor organization and a member is not within the scope of section 301.*

*Korzen v. Local Union 705, International Bhd. of Teamsters,* 75 F.3d 285, 288 (7th Cir.1996) (emphasis added). Accordingly, the *Korzen* court held that federal jurisdiction extended to the claims of the plaintiffs, who were employees of a local union, alleging breach of the international union's constitution but that it did not with respect to their claim of breach of the local union's constitution. "That [latter] claim is a straightforward claim for breach of contract under state common law." *Id.* Several other courts have reached the same result. *See Brown v. Local 701 of the International Bhd. of Elec. Workers,* 996 F.Supp. 781 (N.D.Ill.1998) (holding, in union member's action against local union alleging breach of contract, breach of duty of fair representation, and violation of LMRDA, that (1) court lacked federal jurisdiction over claim that union breached local bylaws, although plaintiff given leave to file amended complaint adding state law breach of contract claim based on bylaws, (2) *Wooddell* breach of contract claim against union could not be based on collective bargaining agreement, rather than union constitution, and (3) claim of breach of duty of fair representation could not be based on local bylaws); *Cornett v. IUE Local 801,* 131 Ohio App.3d 776, 723 N.E.2d 662, 669 (1999) (rejecting preemption challenge, based on LMRA section 301, to union officers' state court suit against local union for damages resulting from temporary removal from office); *Argentine v. United Steel Workers Ass'n,* 23 F.Supp.2d 808, 819 (S.D.Ohio 1998) (in action by former officers of union local, following their removal from office, federal jurisdiction did not extend to claims of breach of local's bylaws); *Agosti v. Libbey–Owens–Ford Co.,* 888 F.Supp. 840, 845 (N.D.Ohio 1994) (local union employees' claim of breach of duty of fair representation, on basis that local union refused to allow ratification vote in violation of its constitution, failed for lack of section 301 federal jurisdiction); *see also Stelling v. International Bhd. of Elec. Workers Local Union Number 1547,* 587 F.2d 1379, 1383–84 (9th Cir.1978), *cert. denied,* 442 U.S. 944, 99 S.Ct. 2890, 61 L.Ed.2d 315 (1979) (holding, in decision predating *Journeymen* and *Wooddell,* that federal jurisdiction pursuant to section 301 did not extend to claims of local union members that union violated its constitution by enter-

ing into agreement with national employers' association without obtaining approval of membership, inasmuch as controversy involved only intraunion dispute, and Congress did not intend section 301 to permit federal judicial intervention in internal union affairs without sufficient effect on labor-management relations).[15]

Applying the foregoing authority, it is apparent that, to the extent that adjudication of Casumpang's pending state action may require the district court to interpret the Union's constitution or bylaws, 29 U.S.C. § 185 is no impediment. The Union's constitution is local, rather than national or international, and its interpretation is guided by state contract law, including any applicable state statutory provisions, such as Hawai'i Revised Statutes (HRS) ch. 388 (1993),[16] which Casumpang cites in his brief. We therefore hold that the district court erred in relying upon 29 U.S.C. § 185 to support its conclusion that it lacked jurisdiction over Casumpang's claim.

## IV. CONCLUSION

Based on the foregoing analysis, the district court's July 12, 1999 order dismissing Casumpang's complaint is vacated, and the matter is remanded to the district court for further proceedings consistent with this opinion.

**15.** We note that some courts have concluded that section 301 preempts union members' state law claims against their union on the basis that the claims related to the union's constitution, although they gave no consideration to whether the local or international constitution was implicated. *See Wall v. Construction & General Laborers' Union, Local 230,* 224 F.3d 168, 178–79 (2d Cir.2000); *Becker v. United Bhd. of Carpenters and Joiners Millwright Local 1755,* 812 F.Supp. 635, 638–39 (S.D.W.Va.1993), *aff'd,* 27 F.3d 562 (4th Cir.1994); *Lewis v. Local 382, International Bhd. of Elec. Workers (AFL CIO),* 335 S.C. 562, 567–68, 518 S.E.2d 583, (1999). To the extent that these decisions are inconsistent with the analysis in *Korzen,* we respectfully disagree with them.

**16.** HRS § 388–3(a) provides:

Whenever an employer discharges an employee either with or without cause, the employer shall pay the employee's wages in full at the time

## DISSENT TO ORDER DENYING MOTION FOR RECONSIDERATION

RAMIL, J., dissenting.

Because I believe Casumpang's state court action involves not only the same factual inquiry, but also essentially the same legal theory that was rejected in Casumpang's Labor Management Reporting and Disclosure Act (LMRDA) claims, I believe we should reconsider our opinion in *Casumpang v. ILWU, Local No. 142,* No. 22726.

In determining the preemptive effect of the LMRDA, this court may look to preemption decisions ·premised on other federal labor statutes. *See e.g. McCall v. Chesapeake & Ohio Railway Co.,* 844 F.2d 294, 299 (6th Cir.1988) (noting that "[i]n determining the preemptive effect of the railway act, we look not only to other railway act cases but to preemption decisions premised on other federal labor statutes.").

In *Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), the United States Supreme Court considered whether an employee covered by a collective-bargaining agreement that provides a contractual remedy for discharge without just cause may enforce a state-law remedy for retaliatory discharge, or whether the state-law remedy is preempted by the Labor Management Relations Act (LMRA). The Court summarized "the principle of § 301 preemption," as follows:

of discharge or if the discharge occurs at a time and under conditions which prevent an employer from making immediate payment, then not later than the working day following discharge.
HRS § 388–5(a) provides:
In case of a dispute as to the amount of wages, the employer shall pay, without condition and within the time set by this chapter, all wages, or parts thereof, conceded by the employer to be due, leaving to the employee all remedies the employee might otherwise be entitled to, including those provided under this chapter, as to any balance claimed.
Finally, HRS § 388–6 provides in relevant part:
No employer may deduct, retain, or otherwise require to be paid, any part or portion of any compensation earned by any employee except where required by federal or state statute or by court process or when such deductions or retentions are authorized in writing by the employee, provided that the following may not be so authorized, or required to be borne by the employee:
(1) Fines[.]

If the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is preempted and federal labor-law principles—necessarily uniform throughout the Nation—must be employed to resolve the dispute.

*Id.* at 406, 108 S.Ct. 1877. Applying this principle, the Court determined that (1) neither of the elements of the state-law retaliatory discharge claim required the Court to interpret any term of a collective bargaining agreement, and (2) an employer's defense to a retaliatory discharge claim was a purely factual inquiry that likewise "does not turn on the meaning of any provision of a collective-bargaining agreement." *Id.* at 407, 108 S.Ct. 1877. Accordingly, the court determined the state-law claim was not preempted by the LMRA because: "The state-law remedy in this case is 'independent' of the collective-bargaining agreement in the sense of 'independent' that matters for § 301 preemption purposes: resolution of the state law claim does not require construing the collective-bargaining agreement." *Id.*

Six years later, in *Hawaiian Airlines, Inc. v. Norris,* 512 U.S. 246, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994), the Court considered whether an aircraft mechanic who claimed he was wrongfully discharged could pursue available state-law remedies for wrongful discharge, or whether he could seek redress only through the Railway Labor Act's (RLA) arbitral mechanisms. The Court determined that *Lingle* provided an "appropriate framework for addressing pre-emption under the RLA" and adopted the *Lingle* standard to resolve claims of RLA pre-emption. *Id.* at 263, 114 S.Ct. 2239. Accordingly, the Court looked to whether the mechanic's state-law wrongful-discharge claims were independent of the collective bargaining agreement. *Id.* at 266, 114 S.Ct. 2239. The Court determined that "[t]he state tort claims [. . .] require only the purely factual inquiry into any retaliatory motive of the employer." *Id.* at 266, 114 S.Ct. 2239. Accordingly, under the *Lingle* standard, Norris' state-law wrongful-discharge claims were not preempted.

Applying the *Lingle* standard to the instant case, Casumpang's state-law claim requires more than a "purely factual inquiry" into whether the Union's bylaws and constitution permit the withholding of Casumpang's vacation pay. Although he disclaims any challenge to the union election or his dismissal, the fact remains that whether Casumpang is entitled to vacation pay turns, first and foremost, upon whether he was wrongfully suspended. If Casumpang was wrongfully suspended, then the union was certainly not entitled to withhold his vacation pay.

The United States Supreme Court opinion *Local No. 82, Furniture and Piano Moving, Furniture Store Drivers, Helpers, Warehousemen and Packers v. Crowley,* 467 U.S. 526, 104 S.Ct. 2557, 81 L.Ed.2d 457 (1984) provides little by way of support for the contention that Casumpang's state-law claim is not precluded by the LMRDA. *Crowley* presented the distinct issue of "whether Title I remedies are available to aggrieved union members while a union election is being conducted." *Id.* at 541, 104 S.Ct. 2557. To make this determination, the Court looked to "the primary objectives that controlled congressional enactment of the LMRDA" for guidance. *Id.* at 543, 104 S.Ct. 2557. Among them, the Court noted that "Congress clearly indicated its intent to consolidate challenges to union elections with the Secretary of Labor, and to have the Secretary supervise any new elections necessitated by the act." *Id.* Noting the importance of the Secretary's role, the Court reiterated that "Congress made suit by the Secretary under Title IV the exclusive postelection remedy for challenges to an election . . . to centralize in a single proceeding such litigation as might be warranted with respect to a single election." *Id.* at 549, 104 S.Ct. 2557 (citing *Trbovich v. Mine Workers,* 404 U.S. 528, 532, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972)).

The Court determined that "whether a Title I suit may properly be maintained by individual union members during the course of a union election depends upon the nature of the relief sought by the Title I claimants." *Id.* The Court concluded:

Whether suits alleging violations of Title I of the LMRDA may properly be main-

tained during the course of a union election depends upon the appropriateness of the remedy required to eliminate the claimed statutory violation. If the remedy sought is invalidation of the election already being conducted with court supervision of a new election, then union members must utilize the remedies provided by Title IV. For less intrusive remedies sought during an election, however, a district court retains authority to order appropriate relief under Title I."

*Id.* at 550, 104 S.Ct. 2557. By way of footnote, the Court added that "[t]he exclusivity provision of the [LMRDA] Title IV may not bar post-election relief for Title I claims or other actions that do not directly challenge the validity of an election already conducted." 467 U.S. at 541 n. 16, 104 S.Ct. 2557. The Court cited to *Ross v. International Brotherhood of Electrical Workers,* 513 F.2d 840 (9th

Cir.1975), and *Amalgamated Clothing Workers Rank and File Committee v. Amalgamated Clothing Workers of America, Philadelphia, Joint Board,* 473 F.2d 1303 (3rd Cir. 1973), neither of which are applicable to the instant case.[1]

Presently, Casumpang seeks to bring a state-law claim for vacation pay. Casumpang has unsuccessfully sought this remedy through federal court action. In bringing this state claim, Casumpang, in effect, seeks to have a state court make a determination as to whether he is entitled to vacation pay. Because whether Casumpang is entitled to vacation pay necessarily turn upon whether he was rightfully or wrongfully suspended, I believe this claim is preempted by federal labor law.

**1.** *Ross* is not controlling because the plaintiff in *Ross* won his election. At that time, his claims under the LMRDA were rendered moot. *Id.* at 841. In other words, Ross's LMRDA claims were never considered or rejected by a federal court. In this context, the Ninth Circuit Court of Appeals concluded that plaintiff's state-law tort claim was allowed to proceeded on its own. *Id.* at 843. Casumpang's LMRDA claims, on the

other hand, were expressly rejected by federal district court. In *Amalgamated Clothing,* the Third Circuit Court of Appeals determined that appellant's LMRDA Title I claim was not precluded by the exclusive remedy provisions of the LMRDA where, although filed before a union election, it did not reach the appellate court until after the election had been conducted and appellant had won. 473 F.2d 1303.